18351

Gladys A. GLISSON and Walter E. Glisson, Jr., Respondents, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, Appellant

(142 S. E. (2d) 447)

*Messrs. Henderson, Salley, Cushman & Summerall,* of Aiken, *for Appellant,*

*Messrs. McNair & Lawton,* of Allendale, *for Respondents,*

Messrs. *Henderson, Salley, Cushman & Summerall*, of Aiken, *for Appellant*,

May 24, 1965.

TAYLOR, Chief Justice.

This appeal arises out of two cases brought at the same time under an identical stipulation of facts and consolidated for the purpose of this appeal. Plaintiffs, husband and wife, on July 14, 1956, were respectively the driver and passenger in a 1954 Plymouth automobile when it was involved in a collision with defendant's insured, Clyde Burton Cheezem.

Defendant disclaimed to Cheezem all liability for the accident on the grounds that the vehicle he was operating at the time of the collision was excluded from coverage under the terms of the policy and that Cheezam had failed to give written notice of the accident as required by the policy. Thereafter, plaintiffs brought separate actions in Federal District Court against Cheezam and on January 5, 1960, each was awarded judgment in the sum of $10,000.00. After *nulla bona* returns were made by the sheriff of Dorchester County, these actions were brought and tried before the Honorable James Hugh McFaddin sitting without a jury, who held that the vehicle driven by Cheezam at the time of the accident was covered under the terms of the

policy and that written notice was given to the insurer as soon as practical. In this appeal no question is presented as to the sufficiency or timeliness of notice.

The facts as stipulated reveal that on November 18, 1954, defendant issued to Cheezem its automobile liability policy, describing the insured as the owner of a 1953 Ford automobile. Said policy was in full force and effect on July 14, 1956. Cheezam is a Methodist Minister and since 1951, a member of the South Carolina National Guard assigned to the Headquarters Battery, 248th F. A. Battalion. He received compensation for such duty through the National Guard from Federal funds appropriated for such purposes. On July 14, 1956, Cheezem was on temporary active duty field training with the National Guard and was on duty as Officer of the Day. His regular duties with the National Guard were Parts Clerk in the Service Battery and Motor Officer in the Headquarters Battery. As part of his duties as Officer of the Day a one-quarter ton, 4 x 4 utility truck (commonly referred to as a "jeep") equipped with four wheel drive and canvas top was dispatched by the Headquarters Battery for his use. Cheezem was duly licensed to operate this type vehicle. While on courtesy patrol in Allendale, S. C., he was involved in the collision with plaintiffs.

The pertinent provisions of the policy provide:

"1. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.  *  *  *

"IV.  *  *  *

(a) Automobile. Except where stated to the contrary, the word 'automobile' means:

(1) Described Automobile—the motor vehicle or trailer described in this policy;

"V. Use of Other Automobiles. If the named insured is an individual who owns the automobile classified as 'pleasure and business' or husband and wife either or both of whom own said automobile, such insurance as is afforded by this policy for bodily injury liability, for property damage liability and for medical payments with respect to said automobile applies with respect to any other automobile, subject to the following provisions:

\* \* \*

(b) Insuring Agreement V does not apply:

(1) to any automobile owned by, registered in the name of, hired as a part of a frequent use of hired automobiles by, or furnished for regular use to the named insured or a member of his household other than a private chauffeur or domestic servant of the named insured or spouse;

(2) to any automobile while used in the business or occupation of the named insured or spouse except a private passenger automobile operated or occupied by such named insured, spouse, chauffeur or servant; \* \* \*."

It is contended that the Trial Judge erred in not finding the jeep was "furnished for regular use to" and in not finding it was "used in the business or occupation" of Cheezem, and if used in the business or occupation, in finding that the "jeep" was "a private passenger automobile."

In determining whether the "jeep" was being "used in the business or occupation" of Cheezem at the time of the accident so, as to exclude coverage under the policy, the terms of the policy must be construed most liberally in favor of the insured and where the words thereof are ambiguous, or capable of two reasonable interpretations, construction most favorable to insured will be adopted. *Baxley v. State Farm Mutual Automobile Liability Insurance Company,* 241 S. C. 332, 128 S. E. (2d) 165; *Kingman v. Nationwide Mutual Insurance Co.,* 243 S. C. 405, 134 S. E. (2d) 217, and any doubt as to the meaning of a clause in an insurance policy should be resolved in favor

of insured and against insurer. *Foster v. Canal Insurance Co.,* 227 S. C. 322, 88 S. E. (2d) 59; *Charles v. Canal. Insurance Co.,* 238 S. C. 600, 121 S. E. (2d) 200.

Webster's New International Dictionary, Second Edition, defines "business" as "a Constant employment; regular occupation; * * * 6. Any particular occupation or employment habitually engaged in, especially for livelihood or gain," and "occupation" as "That which occupies, or engages, the time and attention; the principal business of one's life; vocation; business." Black's Law Dictionary states that the word "business" "has no definite or legal meaning." The synonyms "business" and "occupation" are comprehensive terms which have very broad meaning and may be used in many different connotations.

"Business" is deemed to be an activity of some continuity, regularity, and permanence, means of material being and livelihood, *Board of Suprs. of Amherst County v. Boaz,* 176 Va. 126, 10 S. E. (2d) 498. The commonly accepted meaning of the term is that which occupies the time, attention and labor of men for the purpose of livelihood or profit. *Novak v. Redwine,* 89 Ga. App. 755, 81 S. E. (2d) 222. An enterprise not conducted as a means of livelihood or for profit generally does not come within the ordinary meaning of such terms. City of Coos Bay Aerie No. 538 of Fraternal Order of Eagles, 179 Or. 83, 170 P. (2d) 389. See also Vol. 5, Words and Phrases, for many varied approaches to the meaning of the word "business."

Defendant cites the cases of *Merchants Mutual Casualty Co. v. Capobianco,* 100 N. H. 223, 123 A (2d) 159; *Voelker v. Travelers Indemnity Co.,* D. C., 172 F. Supp. 306; 7 Cir., 260 F. (2d) 275; *Allstate Insurance Co. v. Hoffman,* 21 Ill. App. (2d) 314, 158 N. E. (2d) 428; and *Blackwell v. United States of America and Aetna Casualty & Surety Co.,* 5 Cir., 321 F. (2d) 96, in support of its position that the "jeep" was operated by Cheezem in his business or occupation.

In the *Capobianco case, supra,* 100 N. H. 223, 123 A. (2d) 159, Capobianco was a regularly employed mechanic on the State Military Reservation, who, during an emergency, drove a military vehicle on orders from his superior and was involved in an accident. The Court stated that "duties of an occupation are not ordinarily thought of as being limited to the performance of those acts regularly and usually required by the work but are generally understood to include those additional acts the need for the performance of which arises only infrequently but which are none the less a part of the occupation."

In *Voelker v. Travelers Indemnity Co., Seventh Circuit,* 260 F. (2d) 275, the plaintiff was operating a National Guard truck returning from a two-week summer encampment when he was involved in an accident while in a military convoy. He sought a declaratory judgment for a determination he was covered by his policy with defendant. The Court, noting the question of defendant's freedom from liability under the exclusion is not free from doubt, held that the vehicle was furnished "for the regular use" of plaintiff, and at the time of the collision was "used in a business or occupation of such named insured."

It was stated in 260 F. (2d) 278, 279, that "It is also our view that the truck was being 'used in a business * * * of such named insured.' It was being used in the business of the National Guard, of which plaintiff was a member. In discharging his obligation to the National Guard, we think that in driving the truck he was not only engaged in its business but in his own business as well."

In *Blackwell v. United States of America and Aetna Casualty and Surety Co.,* Fifth Circuit, 321 F. (2d) 96, the Court, following the *Voelker case,* held that National Guard training activity was a business or occupation so as to exclude coverage under assured's automobile policy for an accident between a motorcycle and a 2½ ton National Guard truck parked without lights by the insured on a public highway.

In the case of *Allstate Insurance Co. v. Hoffman,* 21 Ill. App. (2d) 314, 158 N. E. (2d) 428, brought by Allstate for a declaratory judgment seeking an adjudication that the automobile liability policy issued to defendant did not provide coverage for an accident occurring while on active duty, the majority of the Court followed the *Voelker case* and held that Hoffman was engaged in "business while driving an Illinois National Guard truck so as to preclude coverage."

Here Cheezem's primary "business or occupation" is that of a Methodist Minister, and it is from this pursuit that it is assumed he obtains his livelihood. He is not a full-time employee of the South Carolina National Guard, although he does receive compensation for such duty and training in which he may participate.

We are not unmindful of the fact that during the same period a person can engage in more than one business or occupation. However, we are of opinion that participation in National Guard activities, other than on a full-time basis, is not such a "business or occupation" so as to be encompassed by the policy provisions under consideration. As used in the policy the phrase "in the business or occupation of the named insured" refers to a man's vocation and not to his avocation. See concurring opinion in *Hoffman case, supra,* 158 N. E. (2d) 428. The aforementioned cases are not persuasive under the facts here.

In view of the foregoing, it is not necessary to determine whether a "jeep" is a "private passenger automobile" as we are not persuaded that it was being used in the business or occupation of Cheezem at the time of the accident.

In the recent case of *Grantham v. United States Fidelity and Guaranty Co.,* 245 S. C. 144, 139 S. E. (2d) 744, the insured was killed while riding in an automobile furnished by Beaufort County to her husband for his regular use as a deputy sheriff, and this Court held that a policy provision extending coverage for injury sustained while occupying an automobile other than the one defined in the policy, providing the other automobile is not "furnished for the regular use"

of the insured, is unambiguous, and stated: The purpose of such policy provisions is to afford coverage for the infrequent and casual use of vehicles other than the one described in the policy, but not to cover the insured with respect to his use of another vehicle which he frequently uses or has the opportunity to use. The intent is clear to protect the insurer from a situation whereby an insured could purchase a policy covering one automobile and be covered without qualification as to all automobiles available for his use. *Leteff v. Maryland Casualty Co.*, La. App., 91 So. (2d) 123; *Aler v. Travelers Indemnity Co.*, D. C., 92 F. Supp. 620. * * * The automobile was available for business and personal use and so used over an extended period of time. The use by the insured's husband for such purposes was not casual, occasional or infrequent."

At the time of injury, Cheezem was temporarily engaged in the duty of Officer of the Day, thus performing a different duty than that normally required of him. The "jeep" was not furnished for his regular use but, rather, was assigned to him for use in performing the duty of Officer of the Day. There is no evidence in the record as to how frequently Cheezem used this "jeep"; however, his use thereof was necessarily limited as he could only use this vehicle if it was properly dispatched to him.

In *American Universal Ins. Co. v. Dykhouse*, Adm., D. C., 219 F. Supp. 62, it was held that a state-owned automobile furnished a state employee for his limited use in traveling to a convention was not furnished for his regular use as the term was used in the automobile liability policy.

We are, therefore, of opinion that the "jeep" was not "furnished for regular use" to Cheezem and that he was not using such vehicle in his business or occupation under the facts heretofore related, that all exceptions should be dismissed, and the Order and judgment appealed from affirmed; and it is so ordered. Affirmed.

Moss, Lewis, and Bussey, JJ., and Lionel K. Legge, Acting Associate Justice, concur.