MARYLAND AMERICAN GENERAL
INSURANCE COMPANY, Appellant,

v.

Rotha RAMSAY, Appellee.

No. 962.

Court of Civil Appeals of Texas,
Corpus Christi.

May 29, 1975.

Rehearing Denied Aug. 29, 1975.

Richard D. Cullen, Cullen, Carsner & Williams, Victoria, for appellant.

William R. Pemberton, Morrill & Patton, Beeville, for appellee.

OPINION

BISSETT, Justice.

This is a summary judgment case. Rotha Ramsay, the widow of Scott Ramsay, brought suit against Maryland American General Insurance Company to recover death benefits under a policy of insurance which named her husband as the insured. Plaintiff and defendant each filed a motion for summary judgment. After a hearing

on the motions, the trial court granted plaintiff's motion. Defendant's motion was denied. Judgment was rendered for plaintiff. Maryland American General Insurance Company, the insurer, has appealed. The parties will henceforth be referred to as "plaintiff" and "defendant", as they appeared in the trial court.

The facts are undisputed. On June 26, 1973, Scott Ramsay (Ramsay), while driving a utility pickup truck which was owned by the United States Navy, collided with an automobile. He sustained serious injury in the accident and died the same day. The collision occurred upon a public highway in Bee County, Texas.

Ramsay, at all times pertinent to this appeal, was a civil service employee of the United States at Chase Field Naval Air Station, in Bee County, Texas. He was classified as an air-conditioning mechanic. On the day of the accident made the basis of this suit, he, along with Rosendo Gonzales, a co-worker, left Chase Field in the pickup truck (pickup) and proceeded to Capehart, a government-owned housing project for Navy personnel stationed at Chase Field, where they installed a compressor on an air-conditioning unit in one of the houses. The housing project is located in the City of Beeville, Texas, some distance from Chase Field. They were returning to Chase Field to pick up another such compressor, which was also to be installed on an air-conditioning unit in Capehart, when the accident occurred.

The pickup was used solely for transporting crew, tools, equipment and supplies (pertaining to air-conditioning and heating installation, repairs and maintenance) from Chase Field to Capehart, and for work at Capehart. It was a one-half ton vehicle, and had a utility bed with three or four cabinets on each side which contained parts, tools, equipment and supplies used to service and work on refrigeration, air-conditioning and heating units. It was licensed by the United States Navy.

The main policy in this case is denominated "Family Combination Automobile Policy". It contained the usual coverages relating to damages arising out of the ownership and use of the automobiles specified therein, a 1967 Ford Thunderbird and a 1968 Ford Pickup. The policy provided for $50.00 deductible; liability was limited to $10,000 for each person and $20,000 for each occurrence for bodily injury, $1,000 for each person for medical, and $10,000 for each person and $20,000 for each accident for bodily injury under the uninsured motorist provision. The premium for the main policy and the five endorsements thereto was $344.00 for the period commencing November 10, 1972 and ending November 10, 1973. The policy was in force on the day of the accident.

Attached to the policy was an endorsement (157P), entitled "Automobile Death Indemnity, Total Disability and Specific Disability Benefits", which, among other provisions, insured Ramsay for $10,000 in the event he was killed in an accident and his death occurred "directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while in or upon, or while entering into or alighting from, or through being struck by, an automobile . . ." The premium for the indemnity coverage to Ramsay was $4.00. However, the endorsement also contained the following exclusion, which reads as follows:

"This insurance does not apply:

(a) to bodily injury or death sustained in the course of his occupation by any person while engaged (1) in duties incident to the operation, loading or unloading of, or as an assistant on, a public or livery conveyance or commercial automobile . . ."

Unquestionably, Ramsay died "in the course of his occupation". The sole question presented by this appeal is whether or not a United States Navy-owned pickup truck is a "commercial automobile" within the meaning of the quoted exclusion.

Defendant, in its first point of error, contends that the trial court erred in granting plaintiff's motion and in denying defendant's motion because, as a matter of law, plaintiff's husband was, while in the course of his occupation at the time of his death, driving a commercial automobile, and, therefore, was not covered by the terms of the policy since his activities at the time of his death were specifically excluded from coverage. Plaintiff's position is that Ramsay was not engaged in duties incident to the operation of a "commercial vehicle" at the time he was killed in the accident. She argues: the pickup, a "United States Navy-owned, federally-licensed vehicle, driven by a Navy civilian employee with a federal driver's license, was not a 'commercial vehicle'; it was a 'government vehicle' or 'military vehicle', and the policy made the basis of this suit did not exclude government or military vehicles".

Defendant waived its second point of error during oral argument. Consequently, we do not consider that point.

The purpose of the main policy was to protect the insured from financial loss and liability in the use of the Ford Thunderbird and the Ford Pickup. The purpose of endorsement 157P to the main policy was to provide indemnity for bodily injury or death of Ramsay resulting from accidental injury sustained in an automobile accident.

▇ An "automobile" is defined in the endorsement as "a land motor vehicle, trailer, or semi-trailer not operated on rails or crawler-treads". The term "commercial automobile" was not defined in either the main policy or in endorsement 157P thereto. In connection with policies of insurance, the courts of this State which have considered the question have consistently held that the term "automobile" is "a generic term which includes the motor vehicle commonly known as a 'truck'". *Noland v. Allstate Insurance Company,* 459 S.W.2d 702 (Tex.Civ.App.— Houston (1st Dist.) 1970, no writ); *Combined American Insurance Company v. Ganzer,* 350 S.W.2d 211 (Tex.Civ.App.—Waco

1961, no writ); *Nichols v. State,* 156 Tex. Cr.R. 364, 242 S.W.2d 396 (1951). No reason exists why a pickup truck should be considered differently. The term "automobile" also includes a motor vehicle commonly known as a "pickup truck".

Neither plaintiff nor defendant have cited a Texas case that bears directly on the question presented by this appeal. We have not found such a case. However, *Ferguson v. State Farm Mutual Automobile Insurance Company,* 281 Ala. 295, 202 So.2d 81 (1967), is analogous to the case at bar. In that case, Ferguson, while operating a caterpillar road machine in the course of his employment as an operator of such machine for Calhoun County, Alabama, was killed when the machine turned over on top of him. Ferguson was insured under a policy which contained the exact exclusion involved in this appeal. The Court said:

"  .  .  . We think clearly under the facts here that the county-owned caterpillar road machine being operated by the decedent in the course of his employment was a 'commercial automobile' within the clear meaning of the exclusion  .  ."

The Tex.Ins.Code Ann. (1963) does not define the term "commercial automobile". The term "Commercial motor vehicle" is, however, defined in Tex.Rev.Civ.Stat.Ann. art. 6701d–11 § 1, as:

"Any motor vehicle other than a motorcycle, designed or used for the transportation of property, including every vehicle used for delivery purposes".

That definition, while not controlling, is persuasive.

▇ The term "commercial automobile" is not an ambiguous term. It has a meaning which is readily ascertainable in the plain, ordinary, and popular sense of the words themselves. *Hardee v. Southern Farm Bureau Casualty Ins. Co.,* 127 So.2d 220 (La.App.1961); *Peterick v. Mutual of Enumclaw Ins. Co.,* 9 Wash.App. 721, 514 P.2d 188 (1973); *Farmers Insurance Ex-*

*change v. Loesche,* 17 Ariz.App. 421, 498 P.2d 495 (1972); *Molzahn v. State Farm Mutual Automobile Ins. Co.,* 308 F.Supp. 1144 (D.C.Kan.1968); 15A C.J.S. Commercial, pp. 1–3.

In the instant case, Ramsay's employer was not engaged in business or commerce. That fact, however, is immaterial to the question to be resolved in this appeal. The policy of insurance was a contract between defendant, the insurer, and Ramsay, the insured. It did not concern Ramsay's employer, and the exclusion can only apply to Ramsay and his activities. Ramsay was engaged in a commercial activity for profit. It was his business to install, repair and service refrigeration, air-conditioning and heating equipment for the Navy. He was paid for his services. His occupation was commercial in nature, scope and fact. The work that he was doing was not for pleasure purposes, but was for business purposes. His services, if performed for the Navy in the capacity of a sole entrepreneur, or as an employee of a private business concern, undoubtedly would be considered commercial. Ramsay, on the date in question, was not engaged in the service *of* the military; instead, he was a civilian who was hired by the Civil Service Commission, and was performing services *for* the military (Navy).

A pickup truck, by its very nature, is a functioning tool of commerce. It is designed primarily for the transportation and delivery of items of personal property. The fact that the pickup involved herein was also used to house and store tools, equipment and supplies and to serve as a workshop does not detract from its being in use (and used) as a commercial automobile. The pickup was not a military vehicle in the sense that it was designed or being used for military purposes in the ordinary meaning of the word "military". Ownership of the pickup is unimportant in this case. In summary, the pickup in which Ramsay was riding at the time of his death was by intention, use, and construction, a commercial automobile, despite the fact that it was

a government-owned vehicle in use by the military.

This case is strikingly similar to *Ferguson v. State Farm Mutual Automobile Insurance Company,* supra. There, the vehicle (a road grading machine) was owned by Calhoun County, a political subdivision of the State of Alabama. The County was not engaged in business or in any type of a commercial enterprise. The same is true of this case. The pickup was owned by the Navy, a department of the federal government. The Navy was not engaged in business or occupied with commerce. In each instance, the respective *employees* were engaged in business in that each was performing services for profit; each was using a vehicle that enabled him to do work for which he was paid; and each vehicle was commercial in nature, design and use. Moreover, the exclusionary provision in each policy related solely to the employee and an accident that occurred during the course of *his* occupation while he was engaged in duties (among others) incident to his occupation of a commercial automobile. It did not relate to the employer or whether or not such employer (who owned the automobile) was engaged in business for profit at the time in question.

We hold that the pickup in question was a "commercial automobile" within the clear meaning of the exclusion. Since Ramsay sustained death in the course of his occupation while operating a commercial automobile, liability under the death indemnity provision is excluded by the exclusionary clause contained in endorsement 157P to the policy. The trial court erred in granting plaintiff's motion for summary judgment and in denying defendant's motion therefor. Defendant's first point is sustained.

The judgment of the trial court is reversed and judgment is here rendered that plaintiff take nothing by her suit against defendant.

Reversed and rendered.

NYE, Chief Justice (dissenting).

I respectfully dissent. I disagree with the majority opinion with respect to the broad construction given the term "commercial automobile".

The appellee's husband, Scott Ramsay, was killed while driving a utility pickup truck which was owned by the United States Navy. Ramsay was operating the vehicle with a Federal driver's license. Ramsay was classified as a civil service employee of the United States at Chase Field Naval Air Station, in Bee County, Texas. His specific classification was that of an air-conditioning mechanic. He did not do any private work, but worked exclusively for the Navy. On the day of the accident, Ramsay left Chase Field in a government-owned federally licensed pickup truck and proceeded to Capehart, a government-owned housing project for Navy personnel stationed at Chase Field. His purpose there was to install a compressor on an air-conditioning unit in one of the houses occupied by Navy personnel. Upon completion of the job and on his return to Chase Field, the accident occurred resulting in Ramsay's death.

Mrs. Rotha Ramsay, the widow of Scott Ramsay, brought suit to recover death benefits against Maryland American General Insurance Company after the company had refused to pay under its policy of insurance which named her husband as the insured. The trial court granted the widow's motion for summary judgment and rendered judgment for her. From that judgment, appellant insurance company has appealed.

There is no dispute that Ramsay was covered by the policy made the basis of this suit, unless it can be said that the Navy's vehicle was a commercial automobile. The insurance policy's "exclusion" states:

"This insurance does not apply:

(a) to bodily injury or death sustained in the course of his occupation by any person while engaged (1) in duties incident to the operation, loading or unloading of, or *as an assistant on, a public or livery conveyance or commercial automobile,* or (2) in duties incident to the repair or servicing of automobiles." (Emphasis added).

In order for the above exclusion to apply, you must say as a matter of law that a United States, Navy-owned pickup truck is a "commercial automobile". It is the appellee's contention that although her husband was in the course of his occupation at the time of his death, he was not engaged in duties incident to the operation of a commercial automobile. The United States Government and the United States Navy, in particular, are not involved in commerce. They are involved in governmental functions and national defense. The only way to exclude appellee from recovering is to hold that Ramsay was engaged in duties incident to the operation, loading or unloading of, or as an assistant on, a public or livery conveyance or *commercial automobile.* Ramsay's vehicle was without question a government or military vehicle and the policy made the basis of this suit did not exclude government or military vehicles.

There is no question that the phrase "commercial automobile" in the context of the exclusionary clause of the policy has both a broad and a restricted meaning. The question before this Court is whether under Texas Law the broad or the more restrictive meaning should be given to the term "commercial automobile". When an insurance policy is not ambiguous, it is the settled law of this State that the terms used in an insurance policy are to be given their plain, ordinary and generally accepted meaning unless the instrument itself shows that the terms have been used in a technical or different sense. *Guardian Life Insurance Company of America v. Scott,* 405 S.W.2d 64 (Tex.Sup.1966); *Western Reserve Life Ins. Co. v. Meadows,* 152 Tex. 559, 261 S.W.2d 554 (1953), cert. denied 347 U.S. 928, 74 S.Ct. 531, 98 L.Ed. 1081 (1954). In determining the plain, ordinary and generally accepted meaning of the terms of an insurance policy, the courts universally have re-

sorted to the aid of dictionaries. As defined in Webster's New International Dictionary (3rd ed. Unabridged, 1968), a commercial automobile is an automobile used exclusively for commercial use (as the transportation of cargo other than passengers). The term "commercial" is defeined as 1: of, in or relating to commerce; 2a: from the point of view of profit; having profit as the primary aim. Also the term "commerce" is defined as the exchange or buying or selling of commodities, and particularly on a large scale and involving transportation from place to place.

The Navy was not engaged in commerce. If they are not so engaged, their vehicles could not be so engaged. This is particularly true in view of the fact that this vehicle was being used for Navy purposes, i. e., transporting a compressor for repair of a Navy Housing unit. This was in no sense a commercial enterprise. Although a pickup truck may be considered a "commercial" type vehicle, it also may be considered and in fact is used as a pleasure vehicle. It, therefore, follows that it is not the type of vehicle that is controlling, but the use to which the vehicle is put that controls whether or not the exclusionary provisions of the insurance policy apply. The deceased could not be considered to be a functioning tool of commerce or working in the general stream of commerce, because he worked exclusively for the Navy, a non-profit organization. He could not and did not receive a commercial call from a private person to repair a compressor nor could he nor did he use the Navy vehicle for a commercial venture.

This is a summary judgment case. There is no fact issue to be submitted to a jury where there is a dispute as to the interpretation of a provision in an insurance policy. This is so because such disputes are interpreted in favor of the insured. Under Texas law, if words and expressions used in insurance policies are susceptible of more than one construction, they must be interpreted strictly against the insurer and liberally in favor of the insured. *Providence Washington Ins. Co. v. Proffitt,* 150 Tex.

207, 239 S.W.2d 379 (1951); 32 Tex.Jur.2d Insurance § 59; *Snyder National Bank v. Westchester Fire Insurance Company,* 425 F.2d 849 (C.A.Tex. 5th 1970); *Hall v. Great National Lloyds,* 154 Tex. 200, 275 S.W.2d 88 (1955); *Federal Insurance Company v. Bock,* 382 S.W.2d 305 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.); *Commercial Standard Insurance Company v. Ford,* 400 S.W.2d 934 (Tex.Civ.App.—Amarillo 1966, writ ref'd n. r. e.); *Central Surety & Insurance Corporation v. Anderson,* 446 S.W.2d 897 (Tex.Civ.App.—Fort Worth 1969, no writ). It is also the law in Texas that when the contract is capable of two constructions, under one of which recovery is allowed, but under the other of which it is denied, that construction will be given which permits a recovery; and where two interpretations, equally fair, may be made, that which allows the greater indemnity must prevail. *Millers Mutual Fire Insurance Company of Texas v. Hensley,* 414 S.W.2d 488 (Tex.Civ.App.—Fort Worth 1967, no writ). See also *State Farm Mutual Automobile Insurance Company v. Pan American Insurance Company,* 437 S.W.2d 542 (Tex.Sup.1969); *Hardware Dealers Mutual Insurance Co. v. Berglund,* 393 S.W.2d 309 (Tex.Sup.1965). The purpose of an insurance contract being to furnish an indemnity against loss, the contract should be construed in such a way as to effectuate that purpose, rather than in a way that will defeat it. *Travelers Indemnity Company v. Storecraft, Inc.,* 491 S.W.2d 745 (Tex.Civ.App.—Corpus Christi 1973, no writ); *Commercial Standard Insurance Company v. Ford,* supra at 936; *National Emblem Insurance Company v. McClendon,* 481 S.W.2d 186 (Tex.Civ.App.—Texarkana 1972, writ ref'd n. r. e.). This Court in a unanimous opinion said in Storecraft that: " 'An insurance policy must be strictly construed against the company writing it, and particularly of provisions that tend to defeat coverage . . . ' " (quoting from authority).

The vehicle in question was not involved in any proprietary operations for the United States Navy at the time of the accident.

In *Dickerson v. State,* 169 S.W.2d 1005 (Tex.Civ.App.—Austin 1943), rev'd on other grounds, 141 Tex. 475, 174 S.W.2d 244 (1943), the Austin Court held that a member of the National Guard while engaged in the performance of his duties was involved in a governmental and not an industrial or proprietary activity. The analogy to an employee of the United States Navy is compelling.

If the insurance company had intended to exclude vehicles used in the insured's occupation, pickup trucks, or just trucks in general, it should or would have used those terms. If the insurance company had intended to exclude military vehicles or government-owned automobiles and trucks, it could have so provided. (For instance, many life insurance policies exclude coverage while riding in military aircraft). Such terms, however, do not appear and are not used in the exclusionary provisions of the policy in question.

The majority would seem to hold that since the pickup truck was not being used as a pleasure vehicle, it must follow that it was being used as a commercial automobile. I would hold that since the policy terms may be susceptible to two constructions, that construction most favorable to the appellee should be adopted.

For these reasons, I would affirm the judgment of the trial court.

## OPINION ON MOTION FOR REHEARING

BISSETT, Justice.

Plaintiff-appellee, in her motion for rehearing, contends that since the term "commercial automobile" has both a broad and a restricted meaning, the term should be strictly construed against defendant-appellant and liberally in her favor. We do not agree.

We are aware of the rule which requires a Court to construe the terms of a policy of insurance in a manner favorable to the insured where the policy provisions are am- biguous, or are susceptible to more than one reasonable construction or interpretation. That rule, however, does not apply to this case.

The Texas Supreme Court, in *Guardian Life Insurance Company of America v. Scott,* 405 S.W.2d 64 (Tex.Sup.1966), speaking through Mr. Justice Pope, said:

"  .   .   .   Terms used in an insurance contract are given their ordinary and generally accepted meaning unless the policy shows the words were meant in a technical or different sense   .   .   . "

We find nothing in the policy which indicates that the words "commercial automobile" were used or meant in a technical sense. They should be given their ordinary and general meaning. Where undefined terms in an insurance contract are given their ordinary meaning and exclusion of benefits results, language contained therein will not be treated as ambiguous.

As stated in the majority opinion, we have not found a Texas case that has decided whether or not the term "commercial vehicle", undefined in a policy of insurance, is ambiguous. Other jurisdictions have written on this topic.

In *Hardee v. Southern Farm Bureau Casualty Insurance Company,* 127 So.2d 220 (La.App.1961), a case involving the same exclusion as the one at bar, the court held that a "commercial automobile" is not an ambiguous term but has a meaning readily ascertainable in the plain, ordinary and popular sense of the language used. The Supreme Court of Alabama, in *Ferguson v. State Farm Mutual Automobile Insurance Company,* 281 Ala. 295, 202 So.2d 81 (1967), reached the same conclusion as did the several courts in *Peterick v. Mutual of Enumclaw Insurance Company,* 9 Wash.App. 721, 514 P.2d 188 (1973); *Farmers Insurance Exchange v. Loesche,* 17 Ariz.App. 421, 498 P.2d 495 (1972); *Dilley v. State Farm Mutual Automobile Ins. Co.,* 249 Cal.App.2d 385, 57 Cal.Rptr. 195 (1967); and *Molzahn v. State Farm Mutual Automobile Insurance Co.,* 308 F.Supp. 1144 (D.C.Kan.1968).

In *Kirk v. Nationwide Mutual Insurance Company*, 254 N.C. 651, 119 S.E.2d 645 (1961), it was said:

" 'The test is the character of the use of the vehicle taken into consideration with the form of the car.' *Zabriskie v. Law*, 1922, 118 Misc. 471, 194 N.Y.S. 626, 628. 'An automobile truck is a vehicle for the conveyance for commercial purposes over ordinary roads, and the average type of that kind of vehicle is especially designed both in its propelling mechanism and in its body construction for that function.' *American-La France Fire Engine Co., Inc. v. Riordan*, 2 Cir., 1925, 6 F.2d 964, 966. 'The words "commercial use" connote use in a business in which one is engaged for profit.' *Lintern v. Zentz*, 1950, 327 Mich. 595, 42 N.W.2d 753, 756, 18 A.L.R.2d 713. 'In *State v. D., L. & W.R. Co.*, 30 N.J.Law 473, it was held: "By the term 'commerce,' is meant not traffic only, but every species of commercial intercourse, every communication by land or by water, foreign or domestic, external and internal." * * * transportation is as much a part of commerce as are the goods transported.' *Conecuh County v. Simmons*, 1922, 19 Ala.App. 65, 95 So. 488, 489."

■ It has been held that the mere fact that a vehicle is not actually used by the driver to haul for profit is not conclusive in determining whether that particular vehicle is "commercial." *Bauerle v. State Farm Mutual Automobile Insurance Company of Bloomington, Illinois*, 153 N.W.2d 92 (N.D. Sup.1967); *Farmers Insurance Exchange v. Loesche*, supra.

In *Voelker v. Travelers Indemnity Company*, 260 F.2d 275 (C.C.A., 7th Cir. 1958), plaintiff Voelker, the insured and a member of the National Guard, was operating a National Guard truck and was involved in an accident while in a military convoy. Recovery for damages sustained by plaintiff in the accident was denied. The court concluded that at the time of the collision the truck was used in a business or occupation of the insured, and that "it seems reasonable to think that the truck was furnished him for his 'regular use' while acting in performance of his duties as a member of the National Guard." The court further concluded that the insured, while driving the truck, was not only engaged in the business of the National Guard, "but in his own business as well." Other cases which have held that the National Guard member (insured) was engaged in business while driving National Guard trucks (military vehicles) so as to preclude coverage are *Blackwell v. United States of America and Aetna Casualty and Surety Company*, 321 F.2d 96 (C.C.A. 5th Cir. 1963); *Glisson v. State Farm Mutual Automobile Insurance Company*, 246 S.C. 76, 142 S.E.2d 447 (1965); and *Allstate Insurance Company v. Hoffman*, 21 Ill.App.2d 314, 158 N.E.2d 428 (1959).

Under the undisputed facts, Ramsay, at the time of his death, was engaged in the course of his occupation in servicing and repairing an air-conditioning unit, and was driving a pickup truck that was owned by the government. When viewed in the light of the purpose for which the pickup was acquired and used by the Navy, it is obvious that its principal purpose was to serve a business need, not a military need. While the Navy was not engaged in a business for profit, it was engaged in the business of caring for its personnel and their families who lived at Capehart. Since the pickup was furnished Ramsay for his regular use while performing his duties as a civil service employee for the Navy, he was engaged not only in the business of the Navy in serving the needs of Navy families, but in his own business as well. *Voelker v. Travelers Indemnity Company*, supra. There can be no doubt that the pickup was a "commercial automobile" under the exclusionary terms of the policy which is involved here.

■ We remain convinced that the term "commercial automobile", as used in the policy, is not an ambiguous term. The lan-

guage used in the exclusion is too plain to permit judicial interpretation or construction. The two words which comprise the term should be given their ordinary and general meaning. Where words in a contract of insurance are given ordinary meaning and exclusion of benefits results, the language should not be treated so as to create an ambiguity which would result in the opposite of what was so expressed. *Lawrence v. Beneficial Fire and Casualty Insurance Company*, 8 Ariz.App. 155, 444 P.2d 446 (1968). The exclusionary language in the policy precludes coverage under the facts of this case.

The motion for rehearing is overruled.

NYE, Chief Justice (dissenting).

The majority states that the term "commercial automobile" as used in the policy is not ambiguous. However, they go to great lengths to construe all of the facts (as favorable as possible), to bring the exclusionary clause into operation. The majority places great emphasis on these facts: that the deceased was servicing and repairing an air-conditioning unit; that he was doing this in the course of his occupation; that he was driving a pickup truck (a commercial type vehicle); and finally concluding that it was obvious that the principal purpose of the automobile that the deceased was driving, was to serve a "business need", not a "military need".

Even the appellant insurance company falls into the same construing error in its brief. It states " . . . the pickup truck was being used in a proprietary function, that is the furnishing of off base housing not in any way directly connected with a military operation. Again, the proprietary and governmental theories of doctrines of immunity from liability are not concerned with insurance coverage."

The majority cites the Supreme Court case of *Guardian Life Insurance Company of America v. Scott* cited originally in the Dissenting Opinion. This statement of the law is correct: "terms used in an insurance contract are given their *ordinary and generally accepted meaning* unless the policy shows the words were meant in a technical or different sense." (Emphasis supplied.)

The term commercial automobile as used in the insurance policy is limited to the "ordinary and generally accepted meaning", i. e., a vehicle used in commerce. This same type of construction was arrived at in the *Guardian Life Insurance Company of America v. Scott,* supra. There, the Supreme Court was presented with the question of whether the Devereaux Foundation of Victoria, Texas, was a hospital as defined in the insurance policy. There, the Court of Civil Appeals reversed the trial court, holding that it was a hospital. The Supreme Court reversed the Court of Civil Appeals holding that a policy which provides coverage only if "it has" stated facilities does not mean that there is coverage if it "has access" to such facilities in another institution at another place. Here, the purpose of the exclusionary clause in the subject insurance policy was to exclude persons who had sustained bodily injuries or death in the course of their occupation while engaged in duties incident to the operation (of driving a) . . . commercial automobile. The truck involved here was neither an automobile, nor was it a *commercial* automobile.

A businessman driving the family automobile to and from work would not be excluded under the subject policy, of course. A taxi cab driver driving his taxi automobile in the course of his occupation would be excluded. The majority would exclude coverage (for instance), if the admiral of the Naval base was driving a Navy automobile while on his route to an inspection of the same housing unit where the deceased had been. (This was the admiral's allegedly commercial business). The solution to the interpretation of the exclusionary clause comes simply, or not at all, from the generally accepted meaning of the commercial purpose for which the vehicle is used. Only by the majority's construction, as compared to the ordinary and generally accepted

meaning, can it be said that the insured was driving a "commercial automobile" instead of a Navy truck. The Texas laws require that where there are two interpretations, although equally fair, that which allows the greater indemnity must prevail. The purpose of the insurance contract is thus preserved.

The majority cites a number of cases from out of state. Not a single one gives comfort to the construction of a Texas insurance contract. They all can be easily distinguished.

The first case cited is *Hardee v. Southern Farm Bureau Casualty Insurance Company,* 127 So.2d 220 (La.App.1961). It is cited for the proposition that the term "commercial automobile" is not an ambiguous term, but has a meaning readily ascertainable in the plain, ordinary and popular sense of the language used. However, the facts of the case are clearly distinguishable from the case at bar. The truck upon which the decedent in Hardee was killed was owned and used by him to transport pulpwood for the purpose of selling it for a profit. The court held that under these circumstances, the truck was clearly a commercial automobile, in the ordinary and popular meaning of the vehicle. In the case at bar, the truck was not used with a view toward profit by either its owner, the U.S. Government, nor by its driver, decedent. There was no public market.

The case of *Kirk v. Nationwide Mutual Insurance Company,* 254 N.C. 651, 119 S.E.2d 645 (1961) is also not in point. In that case, the truck in question (a 2½ ton Chevrolet maintenance truck) was used principally in the business of the Southern Railway Company and the court therefore held it was a "commercial automobile". Thus, that quoted portion set out in the majority opinion, i. e., "The test is the character of the use of the vehicle taken into consideration with the form of the car," is not at all applicable to the case at bar, in that it pertains to the business of the deceased's employer, Southern Railway Company, and such business being commercial in nature, caused such truck to be considered a "commercial automobile".

The majority cites the case of *Bauerle v. State Farm Mutual Automobile Insurance Company of Bloomington, Illinois,* 153 N.W.2d 92 (N.D.Sup.1967), for the proposition that the mere fact that a vehicle is not actually used by the driver to haul for "profit" is not conclusive in determining whether that particular vehicle is "commercial". However, that case does not support that proposition at all. But, that court on the contrary held that: "The words 'commercial use' connote use in a business in which one is engaged for profit."

In *Voelker v. Travelers Indemnity Company,* 260 F.2d 275 (C.C.A. 7th Cir. 1958), also cited by the majority, the plaintiff was operating a National Guard truck returning from a two-week summer encampment when the driver was involved in an accident while in a military convoy. He sought a declaratory judgment for a determination of whether he was covered by his policy with the defendant insurance company. The policy exclusion in the Voelker case made no reference to "commercial vehicles". It provided only that the insurance agreement did not apply to any automobile while used in a business or occupation of the named insured or spouse. The court, in holding that the vehicle was used in a business or occupation of such named insured, made no reference to business in the commercial sense, or as to profit.

The same holdings with reference to the same provision of the insurance policy as in the Voelker case are found in *Blackwell v. United States,* 321 F.2d 96 (C.C.A. 5th Cir. 1963); and *Allstate Insurance Co. v. Hoffman,* 21 Ill.App.2d 314, 158 N.E.2d 428 (1959). Because no reference is made to "commerce", "commercial automobile" or profit in any of the policies in the above cases, the usual or customary meaning of the term "commercial" was not considered. These cases do not support the majority's position. In fact, in *Glisson v. State Farm Mutual Automobile Insurance Company,*

246 S.C. 76, 142 S.E.2d 447 (1965), the court (contrary to the majority's position) held that a "jeep" (military vehicle) was not such a vehicle in the insured's business or occupation and held that such an exclusion was not applicable. The definition or application of the term "commercial automobile" had escaped the attention of all of the courts, including Texas.

I would grant the motion for rehearing and affirm the judgment of the trial court.