[No. 1702-1. Division One. September 24, 1973.]

JUDITH S. PETERICK, *Appellant*, v. MUTUAL OF ENUMCLAW INSURANCE COMPANY, *Respondent*.

*Benson, Chadwick, Stege & Wines* and *Kirk R. Wines*, for appellant.

*Guttormsen, Scholfield & Stafford, Charles W. Mertel* and *John G. Cooper*, for respondent.

CALLOW, J.—The plaintiff brought suit for benefits claimed under an insurance policy issued by the defendant.

The trial court granted a defense motion for summary judgment, dismissed the plaintiff's complaint, and denied the motion of the plaintiff for summary judgment. The sole issue concerns whether coverage existed under the policy for the death of the husband of the plaintiff, and, more specifically, whether the vehicle in which he was sitting at the time of his death was a "commercial automobile."

The parties filed an Agreed Statement of Facts which recited the essential facts of the case. It stated, except for a minor deletion of an inconsequential item, as follows:

1. On or about August 6, 1965, James Kenneth Peterick purchased a policy of automobile insurance from the defendant, . . .

2. The aforementioned policy was in effect on October 13, 1970.

3. On October 13, 1970, James Kenneth Peterick suffered instantaneous death from bodily injury caused by an accident.

4. James Kenneth Peterick died while in or upon or while entering into or alighting from an automobile, hereafter referred to as "the automobile."

5. Plaintiff has met all requirements under the aforesaid policy for providing notice and proof of her claim to defendant.

6. The defendant has failed to make any payment to the plaintiff for the death of James Kenneth Peterick.

7. The plaintiff is the surviving spouse of James Kenneth Peterick and resided with James Kenneth Peterick in the same household at the time of his death.

8. The automobile was owned by James Kenneth Peterick's employer, Explosives Corporation of America.

9. At the time of his death, James Kenneth Peterick was within the scope of his employment with Explosives Corporation of America.

10. James Kenneth Peterick was killed when an explosion occurred near the truck in which he was sitting, located upon an Explosives Corporation of America test site at Tiger Mountain shortly after James Kenneth Peterick had driven the truck to a loading trailer located on the test site.

11. Driving automobiles was not a normal portion of James Kenneth Peterick's employment, although he was

expected to do so when his job required it. Such activity occurred infrequently.

12. The automobile was a 1966 Chevrolet ¾ ton pick-up truck with 4-wheel drive.

13. Following its purchase, the automobile was modified by Explosives Corporation of America in the following respects:

    (a) A power tailgate was installed for ease in loading items into and out of the truck bed.

    (b) A piece of plywood was placed over the truck bed to facilitate sliding items on the bed.

    (c) A spark-arresting muffler was installed.

    (d) A ground strap was applied.

    (e) Two fire extinguishers and a first-aid kit were placed in the cab.

    (f) The rough tread tires on the front wheels were replaced with regular highway tires to reduce cost and make the automobile easier to steer.

14. The automobile was a general use vehicle stationed at the Tiger Mountain test site. The automobile was used for general pick up and delivery of some materials, chemicals and explosives. The automobile was also used to transport employees from the Explosives Corporation of America office to the test site (a distance of 15 to 20 miles) and to transport said employees to and from various areas on the test site.

15. The automobile was used on several occasions by Employees of Explosives Corporation of America for non-employment purposes, such as hauling wood. On one occasion during a snowstorm, James Kenneth Peterick used the truck for transportation from the test site to his home and to pick up fellow employees for work the following morning.

16. The truck was not used to haul products for sale or exchange, but rather was used for on-site transportation of materials, explosives and employees.

The policy contained a death benefits endorsement under which defendant is obligated to pay $6,000 to the plaintiff in the event decedent's death occurred "while in or upon or while entering into or alighting from, . . . an automobile, . . ."

An exclusion to the policy reads as follows:

This insurance does not apply to death:

(a) sustained in the course of his occupation by any person while engaged (1) in duties incident to the operation, loading or unloading of, or as an assistant on, a public or livery conveyance or *commercial automobile*, . . .

(Italics ours.)

The relevant language of both the insuring agreement and the exclusion appear on a document entitled "Coverage 1-Automobile Death Benefits Endorsement" which is attached to a policy of automobile insurance.

The term "commercial" is defined in the policy, but not in the endorsement:

(b) The term "commercial" is defined as use principally in the business occupation of the named insured, including occasional use for personal, pleasure, family and other business purposes.

Plaintiff contends that this definition does not apply to "commercial automobile" as that term is used in the endorsement. We agree. The endorsement states in part:

CONDITIONS

1. Policy Provisions: None of the insuring agreements, exclusions or conditions of the policy shall apply to Coverage 1 except the conditions "Changes," "Assignment," Cancelation" and "Declarations."

The above-quoted definition of "commercial" does not appear in the sections of the policy entitled "Changes," "Assignment," "Cancelation" or "Declarations" and does not, therefore, apply to the endorsement which is entitled "Coverage 1-Automobile Death Benefits Endorsement."

It is contended that the provision stating that the insuring agreements, exclusions, or conditions of the policy do not apply to "Coverage 1" means only that those portions of the policy do not apply to the "Coverage 1-Death Benefit" portion of the endorsement. The endorsement is entitled "Coverage 1-Automobile Death Benefits Endorsement" and a paragraph in this endorsement is entitled "Coverage 1-Death Benefit." The use of the words "Coverage 1" in the conditions segment of the endorsement is

confusing in that it is difficult to say whether the reference is to the complete endorsement or only to the coverage under the "Insuring Agreements" paragraphs of the endorsement. Provisions of insurance policies are to be interpreted in favor of the insured. *Myers v. Kitsap Physicians Serv.*, 78 Wn.2d 286, 474 P.2d 109 (1970); *Safeco Ins. Co. of America v. McManemy*, 72 Wn.2d 211, 432 P.2d 537 (1967). The definition of "commercial" as contained in the policy has been eliminated by the confused wording of the first paragraph of the conditions section of the endorsement and does not apply to the "Coverage 1-Automobile Death Benefits Endorsement" because of the rule requiring that the policy be interpreted most favorably to the insured.

The question of whether the automobile in which James Peterick was killed was a "commercial automobile" must, therefore, be resolved by an examination of the common meaning of those words. The language of an insurance contract should be interpreted in accordance with the way it would be understood by the average man purchasing insurance. *Glen Falls Ins. Co. v. Vietzke*, 82 Wn.2d 122, 508 P.2d 608 (1973); *Myers v. Kitsap Physicians Serv., supra.*

The words "commercial automobile," however, are not ambiguous within the rule that ambiguous provisions of a policy are to be construed against the insurer. *Ferguson v. State Farm Mut. Auto. Ins. Co.*, 281 Ala. 295, 202 So. 2d 81 (1967); *Hardee v. Southern Farm Bureau Cas. Ins. Co.*, 127 So. 2d 220 (La. App. 1961). In order to state that words are ambiguous, one must be able to say they are equivocal, vague or obscure. This cannot be said when one considers the type of truck involved, the arrangement for its use and the use to which it was being put at the time of the explosion. Whether an automobile is a "commercial automobile" depends upon the character of its use. *Zabriskie v. Law*, 118 Misc. 471, 194 N.Y.S. 626 (1922); *Kirk v. Nationwide Mut. Ins. Co.*, 254 N.C. 651, 119 S.E.2d 645 (1961); *Bauerle v. State Farm Mut. Auto. Ins. Co.*, 153 N.W.2d 92 (N.D. 1967); *Carpenter v. Gasper*, 116 Ohio App. 45, 186 N.E.2d 481 (1962). Although there is some authority

that "commercial automobile" means one utilized in the transporting of goods for sale or exchange, the more prevalent view is that an automobile is a "commercial automobile" if it is a tool of commerce, used in a trade, business or enterprise that has financial profit as its primary aim. *Dilley v. State Farm Mut. Auto. Ins. Co.*, 249 Cal. App. 2d 385, 57 Cal. Rptr. 195 (1967); *Bauerle v. State Farm Mut. Auto. Ins. Co., supra.*

Descriptive words take on their intended meaning and significance only when considered in the context within which they are used. The connotations of a word are unclear as to form and coloring until they are viewed in the framework of their application by the communicating parties. While an insurance policy is to be interpreted in the light most favorable to the insured if ambiguities exist, the provisions should not favor an insured by reading the policy in a way other than it would be understood by the average man purchasing insurance.

When the terminology of this policy is read considering the special features of the vehicle involved and the use to which it was put, it is our opinion that the average man would understand that this vehicle was being used primarily in business for profit as opposed to being used for personal or pleasurable pursuits. Further, in our opinion, the average man would understand that the term "commercial automobile" was not meant to convey a narrow interpretation meaning only use in buying and selling but was meant to encompass the broader implications of engaging in commerce or business of any kind.

In *Kirk v. Nationwide Mut. Ins. Co., supra*, the court noted at page 656:

"The test is the character of the use of the vehicle taken into consideration with the form of the car." *Zabriskie v. Law*, 194 N.Y.S. 626 (1922). "An automobile truck is a vehicle for the conveyance for commercial purposes over ordinary roads, and the average type of that kind of vehicle is especially designed both in its propelling mechanism and in its body construction for that function." *American-La France Fire Engine Co., Inc.*

*v. Riordan*, 6 F. 2d 964 (2d Cir. 1925). "The words 'commercial use' connote use in business in which one is engaged for profit." *Lintern v. Zentz*, 327 Mich. 595, 42 N.W. 2d 753, 18 A.L.R. 2d 713 (1950). "In *State v. D. L. & W. R. Co.*, 30 N.J. Law 473, it was held: 'By the term "commerce," is meant not traffic only, but every species of commercial intercourse, every communication, by land or by water, foreign or domestic, external and internal.' . . . transportation is as much a part of commerce as are the goods transported." *Conecuh County v. Simmons*, 95 S. 488 (Ala. 1922).

We conclude that the decedent was killed in the course of his occupation while engaged in duties incident to the operation of a commercial automobile. The death benefit provided under the endorsement to the policy excludes coverage in such circumstances.

The judgment is affirmed.

FARRIS and WILLIAMS, JJ., concur.

Petition for rehearing denied February 19, 1974.