Rotha RAMSAY, Petitioner,

v.

MARYLAND AMERICAN GENERAL INSURANCE COMPANY, Respondent.

No. B–5514.

Supreme Court of Texas.

Feb. 4, 1976.
Rehearing Denied March 17, 1976.

Morrill & Patton, William R. Pemberton, Beeville, for petitioner.

Cullen, Carsner & Williams, Richard D. Cullen, Victoria, for respondent.

DANIEL, Justice.

The question on this appeal is whether the term "commercial automobile" as used in an exclusionary clause of an insurance policy applies to a Navy-owned pickup truck being operated by a Navy civilian employee in the course of his employment on Navy housing units.

In a suit by Rotha Ramsay, widow of Scott Ramsay, against Maryland American General Insurance Company to recover death benefits under a policy which named her Navy-employed husband as the insured, the trial court rendered a summary judgment for the plaintiff. A divided court of civil appeals reversed and rendered for the insurance company defendant, holding that Ramsay's accidental death occurred while he was engaged in duties incident to the operation of a "commercial automobile," and that this excluded his death from coverage under the policy. Tex.Civ.App., 526 S.W.2d 138. The plaintiff insisted that the term "commercial automobile" in the policy exclusion did not apply to the Navy-owned vehicle being operated by her deceased husband solely for governmental and military purposes, or in the alternative that the term was so uncertain and ambiguous that she should recover under the rule of law which resolves such ambiguities in favor of the insured. We agree with plaintiff's alternative argument and reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

The facts are undisputed. They are fully and accurately detailed in the majority and dissenting opinions of the court of civil appeals, from which we borrow freely, and sometimes verbatim, in our summary of the facts and nature of the case.

On June 26, 1973, Scott Ramsay, while driving a pickup truck which was owned by the United States Navy, collided with an automobile on a public highway in Bee County. He sustained serious injury in the accident and died the same day. At the time Ramsay was a civil service employee of the United States Navy at Chase Field Naval Air Station in Bee County. He was classified as an air-conditioning mechanic. On the day of the accident he and Rosendo Gonzales, a co-worker, left Chase Field in the pickup truck and proceeded to Capehart, a government-owned housing project for Navy personnel stationed at Chase Field. There they installed a compressor on an air-conditioning unit in one of the houses. When the accident occurred they were returning to Chase Field to pick up another compressor, which was also to be installed on an air-conditioning unit at Capehart.

The pickup was used solely for transporting Navy crews, tools, equipment and supplies (pertaining to air-conditioning and heating installation, repairs and maintenance) from Chase Field to Capehart, and for work at Capehart. It was a one-half ton vehicle, and had a utility bed with cabinets on each side which contained parts, tools, equipment and supplies used to service and work on refrigeration, air-conditioning and heating units. It was licensed by the United States Navy. Ramsay had a federal driver's license, and his use of the truck at the time of the accident was solely in connection with his governmental employment.

The main policy in this case is a "Family Combination Automobile Policy" with liability coverages relating to damages arising out of the ownership and use of the Ramsays' personal automobiles. Attached to the policy was an endorsement (157P), entitled "Automobile Death Indemnity, Total Disability and Specific Disability Benefits", which, among other provisions, insured Ramsay for $10,000 in the event he was killed in an accident and his death occurred "directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while in or upon, or while entering into or alighting from, or through being struck by, an automobile . . ." The endorsement contained the following exclusion:

"This insurance does not apply:

(a) to bodily injury or death sustained in the course of his occupation by any person while engaged (1) in duties incident to the operation, loading or unloading of, or as an assistant on, a public or livery conveyance or commercial automobile, or (2) in duties incident to the repair or servicing of automobiles . . . ."

■ The term "automobile" is defined in the endorsement as "a land motor vehicle, trailer, or semi-trailer not operated on rails or crawler-treads," and thus clearly includes a pickup truck. The controlling term, "commercial automobile," is not defined in the main policy or the endorsement. As heretofore indicated, the sole question presented in this appeal relates to whether the United States Navy-owned pickup is a "commercial automobile" within the meaning of the above quoted exclusion. With no definition in the policy, we must first determine whether the term has a readily ascertainable meaning in the plain, ordinary and popular sense of the words themselves. When terms of an insurance policy are unambiguous, they are to be given their plain, ordinary and generally accepted meaning unless the instrument itself shows that the terms have been used in a technical or different sense. *Guardian Life Insurance Company of America v. Scott*, 405 S.W.2d 64 (Tex.1966); *Western Reserve Life Ins. Co. v. Meadows*, 152 Tex. 559, 261 S.W.2d 554 (1953), cert. denied 347 U.S. 928, 74 S.Ct. 531, 98 L.Ed. 1081 (1954).

Both parties argue that the term "commercial automobile" has a plain and generally accepted meaning, but they are at opposite poles as to what that meaning is. Neither has presented a Texas case that bears directly on the question, and we have found none. Neither have we been cited to any cases from other jurisdictions which apply the term as used in this policy exclusion to military or federally owned and operated vehicles. Some cases from other states have analogies helpful to the contentions of both parties, but none are directly in point.

The plaintiff, Mrs. Ramsay, resorts to the aid of dictionaries, as courts often do in seeking plain, ordinary and generally accepted meanings of undefined terms in insurance policies. *Guardian Life Ins. Co. of America v. Scott, supra.* Plaintiff insists that dictionary definitions of commerce, commercial, and commercial vehicles, relate to private transactions and transportation, and none mention "government," "military," or enterprises and operations conducted by governmental or military agencies. Webster's Third New International Dictionary (unabridged, 1971) is cited for the following definition of commercial: "of, in, or relating to commerce . . . from the point of view of profit; having profit as the primary aim . . . ."[1] Most of the insurance cases from other states involving this same exclusionary provision apply this meaning of "commercial." In *Peterick v. Mutual of Enumclaw Ins. Co.*, 9 Wash.App. 721, 514 P.2d 188 (1973), the exclusion was applied to a pickup in which the deceased was killed because he was engaged in the scope of his employment for Explosives Corporation of America, a private company. In stating the meaning of the term "commercial automobile," the court said:

"Although there is some authority that 'commercial automobile' means one utilized in the transporting of goods for sale or exchange, the more prevalent view is that an automobile is a 'commercial automobile' if it is a tool of commerce, used in a trade, business or enterprise that has financial profit as its primary aim."

In *Dilley v. State Farm Mutual Automobile Ins. Co.*, 249 Cal.App.2d 385, 57 Cal. Rptr. 195 (1967), the court said, "The word commercial usually describes commerce, trade, business, industry or enterprise having financial profit as a primary aim." It applied the exclusion because "the truck upon which Dilley worked was an integral

**1.** See other definitions quoted in note 2, infra.

part of Southern California Edison's commercial enterprise, a basic tool used in building, expanding and servicing the transit of power over power lines."

Mrs. Ramsay argues, and all members of the court of civil appeals agreed, that the Navy was not engaged in business or commerce or operating for a profit. She contends that under the plain meaning of "commercial" the Navy pickup was not a vehicle owned or used at the time of the accident for any commercial enterprise or purpose; that it was Navy-owned, federally licensed, and driven by her husband as a full-time Navy civilian employee with a federal driver's license; and that neither the deceased nor the vehicle could be considered functioning instrumentalities of commerce or working in the general stream of commerce, because Ramsay worked and the pickup was used exclusively for a non-profit organization of the United States Government. She insists that the deceased could not and did not receive commercial calls from private persons to do similar repair work, and neither could he nor did he use the Navy vehicle for any commercial venture. So, Mrs. Ramsay's plain meaning of the words "commercial automobile" would exclude the government-owned Navy vehicle while used solely for Navy work. She argues that an average person would not consider the Navy pickup as a "commercial" vehicle while it was being used exclusively for non-profit governmental activities.

On the other hand, Maryland American General Insurance Company argues that the plain and ordinarily accepted meaning of the term applies to any type of vehicle which is used for performing commercial type services and that "the United States Government is undoubtedly the largest commercial enterprise in the world." It

contends that ownership is not important; that use is controlling; that the Navy vehicle was equipped and used in a proprietary commercial enterprise run by the government in competition with private enterprise; that Ramsay was a civilian rather than a military employee, engaged in business and commerce for himself in that he was earning a living through payment for his services; and that the use of the vehicle by Ramsay was of the same nature as would be employed by a private person or company in the repair of air conditioning equipment.

The majority of the court of civil appeals held Ramsay "was engaged in a commercial activity for profit," that his occupation was "commercial in nature, scope and fact." It held that the term "commercial automobile" is not an ambiguous term, because it has a meaning readily ascertainable in the plain, ordinary and popular sense of the words used. In support thereof, the majority cited and followed a Louisiana court of appeals decision which so applied the term to "a truck upon which the decedent was killed . . . owned and used by him to transport pulpwood for the purpose of selling it for a profit . . .", *Hardee v. Southern Farm Bureau Casualty Insurance Company*, 127 S.W.2d 220 (La.Court of App. 1961), and five other cases which followed the *Hardee* reasoning or result. In *Hardee*, the court resorted to the previous edition of the same dictionary cited by Mrs. Ramsay,[2] in concluding that the ordinary and popular meaning of the term applied to the deceased's pulpwood truck being used on the occasion for hauling the deceased's own pulpwood for profit. There is nothing in the definitions relied upon or the reasoning of that decision which convinces us that the same court would have applied the same meaning to a truck which was not used in a

**2.** Webster's New International Dictionary (Second Edition, 1960), p. 538, defining commercial as "1. Of or pert. to commerce, mercantile; hence, variously: occupied with commerce; engaged with trade; . . . 2. Having financial profit as the primary aim

. . ." On the same page commercial automobile is defined as "An automobile used exclusively for commercial purposes, esp. in transporting goods." See also 15A C.J.S. Commercial, 1–3.

commercial business for profit but in a non-profit governmental operation.

Based on the same rationale as *Hardee, supra,* all of the five other cases (with the same exclusionary clause) cited by the court of civil appeals had no difficulty with the meaning of "commercial" because, with only one exception, the vehicle was owned in each case by a private company and was being used by the deceased at the time of the accident in carrying on a business or commercial enterprise operated for profit. For instance, as heretofore indicated, in the Washington case of *Peterick v. Mutual of Enumclaw Ins. Co., supra,* the company-owned truck was being used by the deceased in carrying out the business of a private corporation in testing explosives, and in *Dilley v. State Farm Mutual Automobile Ins. Co., supra,* the deceased was working on a truck owned by a utility company and used in building and servicing the company's power lines. In *Farmers Insurance Exchange v. Loesche,* 17 Ariz.App. 421, 498 P.2d 495 (1972), the deceased was working for a telephone company driving a half-ton pickup furnished by the company "for the exclusive purpose of transporting himself between the pay telephones to make the collections." That case, as well as *Peterick, supra,* stresses that the character of use is controlling. *Peterick* also applies the test of how the wording would be understood by the average man purchasing insurance, and concludes that "the average man would understand that this vehicle [a ¾ ton truck owned and operated by Explosives Corporation of America] was being used primarily in business for profit . . . ." In *Molzahn v. State Farm Mutual Automobile Ins. Co.,* 308 F.Supp. 1144 (Kan.Dist.Ct. 1968), the deceased was using a three-ton truck in the employment of a dairy company and was delivering milk for his employer to retail stores.

*Ferguson v. State Farm Mutual Automobile Ins. Co.,* 281 Ala. 295, 202 So.2d 81 (1967), is the only case in which the vehicle (a county road grader) was owned and operated by a governmental agency and in which the same distinction as here might have been argued, since its use was not in an enterprise that had financial profit as a primary aim. However, no argument to that effect is mentioned in the opinion. The Alabama Court simply followed the result, but not the reasoning, of *Hardee v. Southern Farm Bureau Casualty Ins. Co., supra,* and concluded that the road grader is by nature put to uses which are generally commercial in the ordinary meaning of the term, adding "It was certainly being used for 'commercial purposes' as opposed to private or pleasure purposes . . . ." We do not consider that opinion persuasive on the question of whether the Navy pickup was being used for commercial purposes as opposed to non-profit governmental purposes.

On motion for rehearing, the majority of the court of civil appeals cited *Voelker v. Travelers Indemnity Company,* 260 F.2d 275 (C.C.A., 7th Cir. 1958), and several other cases dealing with a different type of insurance coverage and exclusions applicable to National Guard members involved in accidents while in or operating military vehicles. The exclusions in those cases applied to any automobile furnished for regular use to the insured or "while used in a business or occupation of such named insured . . . ." The policies did not contain any reference to "commercial automobile" and the meaning of that term was not considered. However, the courts did in most of those cases conclude that the military vehicles were being used "in the business or occupation" of the insured. In *Voelker,* the court said that the truck "was being used in the business of the National Guard, of which Plaintiff was a member, . . . ." and "that in driving the truck he [the insured National Guardsman] was not only engaged in its business but in his own business as well." While these cases were not decisive of the same question now before us, they do at least indicate that under certain circumstances a military activity has been referred to as a "business" and military service has been referred to as a

"business or occupation." Thus, the line of cases lends weight, though not certainty, to the insurer's construction of the meaning of the exclusionary words in the Ramsay policy.

We have concluded that both parties have offered reasonable, although conflicting, interpretations of the meaning of "commercial automobile" as applied to the facts and circumstances of this case. The term is not ambiguous when applied to a truck or automobile in actual use by a private individual or company for profit, but uncertainty and ambiguity arise when the term is applied to a Navy-owned truck used exclusively for non-profit activities of the United States Government. It is a settled rule that policies of insurance will be interpreted and construed liberally in favor of the insured and strictly against the insurer, and especially so when dealing with exceptions and words of limitation. *Providence Washington Ins. Co. v. Proffitt,* 150 Tex. 207, 239 S.W.2d 379 (1951). When the language of a policy is susceptible of more than one reasonable construction, the courts will apply the construction which favors the insured and permits recovery. *Continental Cas. Co. v. Warren,* 152 Tex. 164, 254 S.W.2d 762 (1953); *Lloyd's Casualty Insurer v. McCrary,* 149 Tex. 172, 229 S.W.2d 605 (1950); *United Service Automobile Ass'n v. Miles,* 139 Tex. 138, 161 S.W.2d 1048 (1942). Under this well settled rule of law, we are compelled to affirm the trial court's judgment in favor of Mrs. Ramsay.

Accordingly, the judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.

REAVLEY and DENTON, JJ., concur in the result.