**Susan IRION**

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA.**

**Civ. A. No. 4–87–242–K.**

United States District Court, N.D. Texas, Fort Worth Division.

June 5, 1991.

Jeffrey C. Irion, Arlington, Tex., for plaintiff.

Katherine S. Youngblood, Norton & Blair, Houston, Tex., for defendant.

## MEMORANDUM OPINION

BELEW, District Judge.

In this lawsuit, the Court has been called upon to determine whether the Plaintiff's full cranial prosthesis/wig[1] is covered under an insurance policy issued to her by the Defendant, Prudential Insurance Company of America.[2] The Court has previously entered a partial summary judgment for the Plaintiff, narrowing considerably the issues for trial. After a one-day trial on the merits, the Court makes the following findings of fact and conclusions of law.

## I. BACKGROUND

Plaintiff, Susan Irion, is a former employee of American Hospital Supply Corporation, Scientific Products Division, in Grand Prairie, Texas, now known as Baxter Health Care Corporation ("Baxter"), and was covered under a group medical insurance policy. Plaintiff was covered through her employment at Baxter by a health maintenance organization known as "Prucare," which was owned, operated and administered by Prudential Insurance Company of America. Plaintiff also was covered by a group policy of insurance issued by Prudential through her husband's law firm, Policy No. GSP–87916F.[3]

During her employment at Baxter, Plaintiff became inflicted with the illness known as alopecia areota totalis, which resulted in the total loss of the hair on her head. As a result of her hair loss, Plaintiff wears a full cranial prosthesis/wig. Plaintiff's full cranial prosthesis/wig and subsequent replacements were prescribed by her treating physicians as medically necessary for the treatment of her illness.

With the exception of the full cranial prostheses/wigs, all of Plaintiff's prior medical treatment and care in connection with the disease were paid for in accordance with the terms of the medical insurance coverages. Prudential, however, refuses to pay for any past or future full cranial prostheses/wigs, although under the language of the policies at issue, Defendant has approved payment of breast

---

**1.** Throughout much of the duration of this lawsuit, the parties have been unable to agree on how to refer to the Plaintiff's hairpiece, the subject of this litigation. Plaintiff refers to it as a "full cranial prosthesis," undoubtedly chosen for its irrefutable persuasive value in convincing the Court that it ought to be covered under the policy. Defendant, preferring to call a spade a spade, consistently refers to it as a "wig." At trial, the defense attorney persisted in asking each and every witness whether he or she had previously heard the term "cranial prosthesis", suggesting that the term was manufactured specifically for this lawsuit in some sort of hair-brained scheme. Remarkably, however, in the pretrial order the parties entered into a compromise in which the hairpiece was referred to as a "full cranial prosthesis/wig". Out of respect for the parties and their agreement, the Court will refer to it in the same manner.

**2.** Not since Farmer Brown's mules stomped on Miss Belle's petunias has a case of such magnitude come before this Court. Indeed, this case rivals such great legal landmarks as the "hairy hand case" and the Scopes monkey trials for a place in the upper echelon of American jurisprudential history. The enormous significance of the case lies primarily in the fact that the grand total of the amount in controversy in the lawsuit is $440.00. In its most basic form, this case can be summed up as follows: Plaintiff, at the inducement of Prudential, got herself a "piece of the rock," and now that it's time for the insurance company to pay, Prudential wants to take its rocks and go home.

**3.** Plaintiff is no longer covered by this policy, as she is currently divorced from Mr. Irion, her attorney of record in this case.

prostheses, penile implants, cosmetic gloves to cover prosthetic hands, artificial eyes and larynxes, as well as other medical apparatuses not specifically set forth in the body of the policies. Jurisdiction of this case is predicated on ERISA.

## II. DISCUSSION

The insurance policy at issue in this lawsuit provides for coverage of "artificial limbs, larynxes and eyes," and pays for prostheses that are medically necessary in the treatment of the patient's condition. Webster's Ninth New Collegiate Dictionary defines "prosthesis" as "an artificial device to replace a missing part of the body." And while most would agree that hair is, indeed, a *part* of the body, the Defendant insurance company argues that hair is not a limb and, therefore, should not be eligible for coverage under the policy.

 Both common and medical dictionaries alike assign a broad definition to the word "limb". The American Heritage Dictionary defines "limb" as "any extension or projecting part." Similarly, Taber's Medical Dictionary defines "limb" as "an extremity," and defines "extremity" as "the terminal part of anything." Thus, because it is reasonable to consider hair an extremity, and therefore a limb, and because insurance provisions must be construed in favor of the insured,[4] the Court previously entered a partial summary judgment in favor of the Plaintiff.

In the May 17, 1990 Order, the Court put an end to the hairsplitting and held that the insurance policy includes a full cranial prosthesis/wig as a covered item, although it is not specifically listed in the policy.[5] Thus, the only issue left to be tried was whether the Plaintiff's purchase of an

$850.00 full cranial prosthesis/wig was reasonable.

### The Testimony At Trial

 At trial, two witnesses testified for the Plaintiff and one for the defense. Susan Irion, the Plaintiff, testified, as well as Mr. Oliver Campbell, the owner of the business that sold the full cranial prosthesis/wig to Ms. Irion. Ann Cherry, a claims consultant for Prudential, testified for the defense.

The Plaintiff's first witness was Mr. Campbell, who made and sold the full cranial prosthesis/wig to the Plaintiff through his business "Oliver's Hair Replacements". Mr. Campbell came to trial sporting a cranial prosthesis/wig of his own, handmade in his own shop. He testified that full cranial prostheses/wigs are created by using plaster casts and human hair imported from Italy, with each hair being put in by hand. They are attached with two-way tape. The full cranial prostheses/wigs that Mr. Campbell manufactures are unlike stretch wigs in that they may be used in a wider variety of activities, including swimming.

Mr. Campbell further testified that the lifespan of his full cranial prostheses/wigs is approximately one year, and that the price in California for a full cranial prosthesis/wig of the same quality is $1,200.00 to $1,600.00, a significant difference from the price he receives. Finally, he testified that he offers a discount to his clients whose baldness is caused by a disease such as alopecia areota totalis.

Susan Irion, the Plaintiff, testified that, in the past, she had used what are known as "stretch wigs," but they restricted the type of activities in which she could participate and did not look as natural or feel as comfortable as the full cranial prosthesis/wig she purchased from Mr. Campbell.

---

4. The law dictates that insurance policies be interpreted in favor of the insured and strictly construed against the insurer. *See, e.g., Glover v. National Ins. Underwriters*, 545 S.W.2d 755 (Tex.1977); *Ramsey v. Marilyn General Ins. Co.*, 533 S.W.2d 344 (Tex.1976). When the language of a policy is susceptible to more than one reasonable construction, courts will apply the construction that favors the insured and permits recovery. *Ramsey*, 533 S.W.2d at 349.

5. Although the summary judgment order was issued without a detailed opinion, the Court was persuaded by the Plaintiff's brief, which made valid arguments for why cranial prostheses/wigs should receive the same treatment as breast prostheses, which Prudential currently pays for under the heading of artificial limbs.

In contrast to the $800.00 price of the Campbell wig, a stretch wig typically costs about $250.00.

Prudential's one witness was Ann Cherry, the claims consultant who reviewed Susan Irion's claim and decided that it was not eligible to be covered under the policy. She testified that the policy lists as eligible items artificial larynxes, artificial limbs, and artificial eyes, but that artificial limbs must be ordered by a doctor and necessary for a patient's medical care before they will be covered under the policy. She further explained that an item is not considered eligible for coverage unless a doctor has ordered that one be provided or replaced.

The Court is intrigued by Ms. Cherry's hair-raising testimony regarding the denial of the Plaintiff's claim for reimbursement for her full cranial prosthesis/wig. Although Prudential has, in the past, paid for such items as breast prostheses, it maintains that it only pays for items that are medically necessary.[6] In denying Ms. Irion's claim, Prudential informed her that a full cranial prosthesis/wig serves no medical purpose, but rather offers only cosmetic and therapeutic value.

The Court finds Ms. Cherry's testimony unpersuasive. On the subject of whether the insurance company should pay for items such as full cranial prostheses/wigs, Ms. Cherry testified that if her company paid for a full cranial prosthesis/wig, which she maintains is purely cosmetic and only makes the individual feel better, then the company would have to pay for anything else that makes an individual feel better, including diet and weight control programs, dance lessons, and even vacations.[7] Since these items are not even arguably covered by the policy, this is a completely tenuous analogy and is totally lacking in merit.

The Court also finds it rather astonishing that the insurance company makes the bald assertion that a breast prosthesis, which is merely cosmetic and not functional, serves a medical purpose sufficient to entitle it to coverage, whereas a full cranial prosthesis/wig serves only a therapeutic purpose. It is difficult to find a more appropriate analogy than comparing an artificial breast to artificial hair in this context. Neither has much practical application, but both have substantial cosmetic and psychological benefits. In fact, while a breast prosthesis serves no practical medical purpose, a full cranial prosthesis/wig helps retain body heat, since a great percentage of one's body heat is lost through the head.

Furthermore, it is a recognized fact in our society that it is more acceptable for a man to be bald than a woman. Cranial prostheses/wigs for men have not been in style since the colonial days of George Washington, and likely will not resurface as the latest fad in the near or distant future. Yet while many bald men do nothing whatsoever to alter their appearance,[8] society does not permit women to enjoy the same luxury. To function well in society, a woman must both feel and appear "normal". Surely a woman who chooses to wear a breast prosthesis does so to appear "normal." Ms. Irion is no different.

---

6. It is especially interesting to note that breast prostheses are considerably more expensive than full cranial prostheses/wigs and have many more inherent risks.

7. The dialogue at trial was as follows:
Q: Can you think of other things other than wigs that Prudential would have to pay if it made an exception and paid things that provided therapeutic value in the form of emotional benefits?
A: Exercise programs, weight loss—some of the weight loss programs for people who aren't really overweight, just slightly heavy, health spas, dance lessons, vacations, I guess the list would be almost endless.

Q: If you were to adopt such a broad view of what was payable on a policy do you think a new mother could get a live-in maid to help her with a baby that won't sleep through the night?
A: That would have to be in that same category.

8. Professional athletes, for example, perform amazingly well, often without any hair on their heads. Indeed, the image that comes to mind is that of Michael Jordan soaring through the air to perform one of his patented slam dunks. And while Michael may lead the league in style and scoring, he does so without the use of a full cranial prosthesis/wig.

## III. CONCLUSION

The Court finds, based upon the testimony of Mr. Oliver Campbell and the Plaintiff, Susan Irion, that the $850.00 cost of the full cranial prosthesis/wig is a reasonable expense in light of the added utility and enhanced appearance of the full cranial prosthesis/wig as compared to the stretch wig.

The Plaintiff has carried her burden of proving by a preponderance of the evidence that the insurance policy issued by Prudential includes a full cranial prosthesis/wig used to treat alopecia areota totalis as a covered item under the policy, and that the price paid for the full cranial prosthesis/wig she purchased was reasonable. Therefore, Plaintiff Susan Irion is entitled to compensatory damages for the losses she has sustained.[9] Because the policy carries a $300.00 deductible and pays eighty percent of the remainder, it is hereby ORDERED that Plaintiff is entitled to recover from the Defendant the amount of $440.00 plus interest.[10]

It is further ORDERED that Plaintiff is entitled to a reasonable attorney's fee in the amount of $15,000.00, plus $5,000.00 for each level of appeal that is taken. The Court's judgment in conformance with this memorandum opinion shall be entered this same date.

---

9. It should be noted, however, that this opinion should not be interpreted as extending this type of coverage to men who suffer from male pattern baldness; rather, this decision should be limited to its facts. Male pattern baldness is the result of genetic heredity, whereas Ms. Irion's full cranial prosthesis/wig was prescribed as being medically necessary for the treatment of alopecia areota totalis, the disease from which she suffers.

10. Subtracting the $300.00 deductible from the $850.00 price of the full cranial prosthesis/wig leaves $550.00. Eighty percent of $550.00 is $440.00, the amount Plaintiff is entitled to recover.