United States Court of Appeals,

Fifth Circuit.

No. 91–1687.

Susan H. IRION, Plaintiff–Appellee,

v.

PRUDENTIAL INSURANCE CO. OF AMERICA, Defendant–Appellant.

June 29, 1992.

Appeal from the United States District Court for the Northern District of Texas.

Before GOLDBERG, HIGGINBOTHAM, and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Prudential Insurance Company of America (Prudential) appeals from a judgment in favor of Susan H. Irion, awarding her $440 on an health insurance policy and $25,000 in attorney's fees.[1]  In this appeal, Prudential contends that the district court erred in finding that Ms. Irion's policy covered her claim for reimbursement of the cost of awig.  After a careful review of Ms. Irion's insurance policy, we conclude that the policy does not cover her claim and, therefore, reverse.

I.

Ms. Irion suffers from an illness known as alopecia areata totalis, which has resulted in the total loss of the hair on her head.  As a result of her hair loss, Ms. Irion wears a wig.[2]  Initially, Ms. Irion purchased "stretch" wigs, which cost appro ximately $250.  Ms. Irion began buying custom-made wigs at a cost of $850, however, because the stretch wigs were uncomfortable and did

---

[1]The district court's Memorandum Opinion, 765 F.Supp. 337 (N.D.Tex.1991), awards Ms. Irion $15,000 in attorney's fees plus $5,000 for each level of appeal.  R. at 816.  The court's Final Judgment, however, states that Ms. Irion is "entitled to reasonable attorney's fees in the amount of $25,000.00, with a credit in the amount of $10,000.00 to be given if no appeal is taken to the Fifth Circuit Court of Appeals, and a $5,000 credit given if no appeal is taken to the United States Supreme Court."  R. at 817.

[2]In her brief, Ms. Irion refers to her wig as a "full cranial prosthesis."  While we do not mean to diminish Ms. Irion's claim, for simplicity and clarity, we will refer to Ms. Irion's hairpiece as a wig.

not look natural.

When Ms. Irion first began to suffer from alopecia, she was covered by several insurance policies, all of which Prudential administered. The policy at issue in this appeal (the GSP policy) is a group insurance policy that Prudential issued to Ms. Irion's former husband's law firm. Since she was diagnosed as having alopecia, Ms. Irion has received benefits under the various policies for her medical treatment and care. Prudential has refused, however, to pay for the cost of Ms. Irion's wigs.

As a result, Ms. Irion sued Prudential, under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.,* for a clarification of her rights under the policies and for breach of Prudential's fiduciary duty. The district court granted partial summary judgment, finding that the policy covered wigs. Following a bench trial, the court entered a final judgment in favor of Ms. Irion for $440 and $25,000 in attorney's fees.[3] Prudential filed a timely appeal.

## II.

The question that this appeal presents is whether the GSP policy at issue provides coverage for wigs. Prudential argues that the policy only covers certain specified expenses that are medically necessary for the treatment and care of an insured's illness. Ms. Irion, on the other hand, contends not only that the policy covers her wig because it is necessary but also that Prudential has extended coverage to similar expenses in the past.

We look first to the policy to determine whether by its terms it provides coverage for Ms. Irion's wig. Ms. Irion argued, and the district court found, that although the policy does not explicitly cover wigs, it includes wigs under its coverage for "artificial limbs, larynx and eyes." The court

---

[3]The court's award of $440 represents full recovery under the policy for the cost of one custom-made wig. Although the wig cost $850, the GSP policy only pays benefits for 80% of an eligible expense after a $300 deductible has been met. In this suit, Ms. Irion only seeks reimbursement for the cost of one custom-made wig.

reasoned that hair is a "limb" because hair is an "extremity" and an "extremity" is a "limb." The court concluded that because hair is a "limb" a wig is an "artificial limb."

We disagree with the district court's conclusion that hair is a limb and that, therefore, a wig is an artificial limb. "Hair" is

> a slender t hreadlike outgrowth of the epidermis of an animal;  [especially]:  one of the [usually] pigmented filaments thatform the characteristic coat of a mammal, contain neither blood vessels nor nerves and are composed chiefly of elongated and modified epidermal cells covered by a cuticle of flat imbricated cells that produce a rough surface.

*Webster's Third New International Dictionary* 1020 (1981).  *See also Stedman's Medical Dictionary* 1201 (25th ed. 1989).  In contrast, a "limb" is defined as

> one of the projecting paired appendages (as an arm, wing, fin, or parapodium) of an animal body made up of diverse tissues (as epithelium, muscle, and bone) derived from two or more germ layers and concerned [especially] with movement and grasping but sometimes modified into sensory or sexual organs.

*Webster's Third New International Dictionary* 1311 (1981).  Medical sources define "limb" similarly as an "extremity;  a member;  an arm or a leg," *Stedman's Medical Dictionary* 877 (25th ed. 1989), and "one of the paired appendages of the body used in locomotion or grasping.  In man, an arm or a leg with all its component parts." *Dorland's Illustrated Medical Dictionary* 936 (27th ed. 1988).[4]

Under this provision, the policy's language is unambiguous and does not extend coverage to wigs as artificial limbs.  Moreover, Ms. Irion has not pointed to, and we have not found, any other provision in the policy that supports recovery.  Thus, the district court incorrectly characterized hair as a limb and incorrectly determined that wigs are artificial limbs.  Consequently, if the plain language of the policy alone governs Ms. Irion's claim, she cannot recover the cost of her wig.

---

[4]Although *Stedman's Medical Dictionary* does define "limb" as an "extremity," as the district court did, it also defines "extremity" or "extremitas" as "one of the ends of an elongated or pointed structure.  *Incorrectly used to mean limb.*" *Stedman's Medical Dictionary* 553 (25th ed. 1989) (emphasis added).

Ms. Irion argues, however, that even if a wig is not an eligible expense Prudential has extended coverage, beyond the policy's list of eligible expenses, to include similar, unlisted items. For this extension of coverage, Ms. Irion relies on an internal memorandum generated by Prudential. This memorandum lists certain expenses as covered. Ms. Irion contends that because the list includes such expenses as alarm bedwetting devices, artificial ears and noses, and penile and breast prostheses, it should also extend to cover wigs.

Even if we consider this memorandum as extending the policy terms, Ms. Irion still cannot recover for her wig. Although the extended list covers many additional expenses, it specifically excludes coverage of wigs. The memorandum lists wigs as miscellaneous items that are ineligible for coverage. In addition, the memorandum states that "while many non-covered items contribute to the improvement of a person's actual physical or psychological sense of well-being (as examples, air purifiers and wigs), they are not commonly considered to be items of a medical nature designed specifically to treat illness or injury." Thus, even if we accept Ms. Irion's argument that Prudential has expanded coverage to include expenses not listed in its standard policies, Ms. Irion cannot prevail because Prudential has not extended this coverage to wigs.

## III.

For the reasons stated above, we reverse the district court's judgment in favor of Ms. Irion and render judgment in favor of Prudential.

REVERSED AND RENDERED.