COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-496-CV

 

 

VINEYARD VILLAGE, LTD. AND                                           APPELLANTS

VINEYARD VILLAGE, MSV, LLC

 

                                                   V.

 

UNIVEST PROPERTIES, INC.,                                                  APPELLEES

TRUSTEE, AND YORKSHIRE 

WEST REALTY ADVISORS, L.P.

 

                                              ------------

 

            FROM THE 67TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                          I.  Introduction








In three issues, Appellants Vineyard Village,
Ltd. and Vineyard Village MSV, LLC (AVineyard@)
complain that the trial court erred by granting summary judgment for Appellees
Univest Properties, Inc. and Yorkshire West Realty Advisors, L.P.,[2]
by excluding Vineyard=s summary judgment evidence, and
by awarding attorneys= fees to Univest and
Yorkshire.  We affirm.

                          II.  Factual and Procedural Background

In 2005, Vineyard entered into a real estate
purchase and exchange agreement (the AAgreementA) with
Univest to purchase property located on Highway 121 in Euless, Texas, for the
development of a retail shopping center. 
Under the Agreement, Univest retained an undeveloped portion of the
property near the highway=s frontage road.  Section 10.04 of the Agreement required the
parties to prepare and execute a reciprocal easement and operating agreement
(the AREA@) to
provide for the shopping center=s
layout, construction, and design guidelines.

In early 2006, Vineyard and Univest negotiated
and executed the REA, which provided, in pertinent part, for the following:

3.  Use Restrictions.  The Shopping Center shall be used for retail
and/or restaurant purposes . . . .  The .
. . Vineyard Properties and the Univest Property, respectively, shall be
entitled to no more than two (2) financial institutions.

 








4.  Layout [and Construction] of the Shopping
Center.  The Shopping Center shall be
constructed in substantially the manner set forth on the Site Plan; provided,
however, each Party shall not unreasonably withhold consent for minor revisions
to same so as to accommodate prospective tenants as it benefits the layout of
the Shopping Center.  This shall include
the pad sites fronting on State Highway 121 which may be laid out differently
so long as each pad site contains sufficient parking for it[s] use.  Additionally, the Univest Property may either
contain the four (4) separate pad sites substantially as shown on the Site Plan
or contain three (3) pad sites so long as all three (3) buildings are separated
by at least one hundred feet (100=). . . .

 

5.  Height Restrictions.  All buildings on the Univest Property as well
as all . . . Vineyard Properties shall be limited to a height of twenty-four
feet (24=) inclusive of parapets
and other architectural features. . . .

 

6.  Screening.  The Vineyard Owner shall install and plant
vegetation screening . . . .

 

7.  Dumpster Enclosures.  All dumpsters shall be suitably enclosed so
as to screen same from view.  The
enclosures shall use masonry walls with hinged doors to remain attached and
functioning at all times. . . .

 

After the execution of the REA, Vineyard constructed its portion of
the shopping center. 








In 2008, Univest filed a site plan application
with the Euless Planning and Zoning Commission. 
The application contained Univest=s plans
for three pad sites, instead of the four pad sites as shown in the original
Site Plan attached to the REA, with a 16,000 square foot retail building on one
of the sites.  After learning of the
application, Vineyard sent Univest a letter in which Vineyard complained that
Univest=s
planned structure constituted a Amaterial
change@ and
demanded that Univest cease its development and comply with the terms of the
REA.

Shortly thereafter, Vineyard filed suit against
Univest for breach of contract, seeking, among other things, injunctive relief
to stop Univest=s development.  In its petition, Vineyard asserted that the
terms of the REA required Univest to build four restaurant pad sites and that
Univest=s plan
to create only three pad sites with a retail building of approximately 16,000
square feet on one of the pad sites was a Amajor
revision@ that
required Vineyard=s consent.  Vineyard later supplemented its petition to
assert that the REA contained ambiguous terms. 
After a hearing on the temporary injunction, the trial court denied
Vineyard=s
request.

On April 21, 2008, Univest filed a traditional
motion for partial summary judgment, claiming that as a matter of law its site
plan did not violate the terms of the REA. 
Specifically, Univest argued that it was entitled to summary judgment
because, under rules of contract construction, the REA allowed Univest to (1)
create three pad sites instead of four, (2) use the pad sites for retail, and
(3) build a 16,000 square foot building on one of the pad sites.








In response, Vineyard asserted that language in
section four of the REA is ambiguous and therefore raises a genuine issue of
material fact.  Specifically, Vineyard
claimed that the REA is silent as to (1) what constitutes a Amajor@ or a Aminor@
revision for consent purposes, (2) when it would be Aunreasonable@ to
withhold consent for a Aminor@
revision, and (3) under what circumstances consent could be withheld for a Amajor@
revision.  Vineyard=s
response included, among other things, an affidavit and the deposition
testimony of Burk Collins, a Vineyard representative.  Collins testified as to his interpretation of
the terms alleged by Vineyard to be ambiguous.

Univest filed objections to Vineyard=s
summary judgment evidence, asserting that Vineyard sought to improperly use
parol evidence in an attempt to create a fact issue.  Further, Univest claimed that Collins=s
affidavit was vague, ambiguous, conclusory, and included statements by an
interested party that were not readily controvertible.








After a hearing on Univest=s
partial motion for summary judgment, the trial court granted judgment in favor
of Univest and sustained several of Univest=s
evidentiary objections.  The trial court
subsequently granted Univest=s motion
for attorneys= fees and then signed a final
judgment, ruling that Univest=s
planned structure complied with the terms of the REA as a matter of law and
awarding to Univest and Yorkshire Anecessary
and reasonable@ attorneys= fees
and costs.  This appeal followed.

III. 
Partial Motion for Summary Judgment

In its first issue, Vineyard argues that the
trial court erred by determining that Univest=s
planned structure complied with the terms of the REA as a matter of law because
Vineyard=s
summary judgment evidence created material fact issues with regard to several
essential terms in the REA.

A.  Standard of Review

In a summary judgment case, the issue on appeal
is whether the movant met the summary judgment burden by establishing that no
genuine issue of material fact exists and that the movant is entitled to
judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex.
2002); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678
(Tex. 1979).  The burden of proof is on
the movant, and all doubts about the existence of a genuine issue of material
fact are resolved against the movant.  Sw.
Elec. Power Co., 73 S.W.3d at 215.








When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s
favor.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). 
Evidence that favors the movant=s
position will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).  But we must consider whether reasonable and
fair-minded jurors could differ in their conclusions in light of all of the
evidence presented.  See Wal-Mart
Stores, Inc. v. Spates, 186 S.W.3d 566, 568 (Tex. 2006); City of Keller
v. Wilson, 168 S.W.3d 802, 822B24 (Tex.
2005).

B.  Discussion

The principal dispute between the parties is
whether the first sentence in section four of the REA (the Aconsent
provision@) is applicable to Univest=s plans
to create three pad sites and to build a 16,000 square foot retail structure on
one of the pad sites.  Section four
states, in pertinent part, the following:

(4)  Layout
[and Construction] of the Shopping Center. 
The Shopping Center shall be constructed in substantially the manner set
forth on the Site Plan; provided, however, each Party shall not unreasonably withhold
consent for minor revisions to same so as to accommodate prospective
tenants as it benefits the layout of the Shopping Center.  This shall include the pad sites fronting on
State Highway 121 which may be laid out differently so long as each pad site
contains sufficient parking for it[s] use. 
Additionally, the Univest Property may either contain the four (4)
separate pad sites substantially as shown on the Site Plan or contain
three (3) pad sites so long as all three (3) buildings are separated by at
least one hundred feet (100=). . . .
[Emphasis added.]








Vineyard argues that Aseveral
reasonable interpretations exist as to when, and how, a party may change the
shopping center layout depicted in the Site Plan@ and
that the terms Aminor revisions@ and Aunreasonably
withhold consent@ in section four of the REA are
susceptible to more than one meaning. Vineyard claims that because there is
more than one reasonable interpretation for these terms, fact issues exist as
to whether Univest=s planned structure is a Aminor
revision@ and
whether Vineyard Aunreasonably withh[e]ld consent.@  Vineyard=s
arguments rest on its claim that Univest=s
planned structure is a revision regardless of whether it is a Aminor
revision@ or a Amajor
revision.@ 
Univest, on the other hand, argues that because its plans are in
compliance with the REACand therefore do not constitute
a revisionCVineyard=s
consent is not required.  Univest further
asserts that Vineyard=s interpretation of the consent
provision is unreasonable because it renders express provisions in the REA
meaningless.  We agree with Univest.








When construing a written contract, our primary
concern is to ascertain the true intent of the parties as expressed in the
instrument.  NP Anderson Cotton Exch.,
L.P. v. Potter, 230 S.W.3d 457, 463 (Tex. App.CFort
Worth 2007, no pet.); see also Republic Nat=l Bank
of Dallas v. Nat=l Bankers Life Ins. Co., 427
S.W.2d 76, 79B80 (Tex. Civ. App.CDallas
1968, writ ref=d n.r.e.) (noting that courts
should not consider the Aintention which the parties may
have had, but failed to express in the instrument@).  In doing so, we must examine and consider the
entire contract in an effort to harmonize and give effect to all provisions so
that none are rendered meaningless.  Potter,
230 S.W.3d at 463; see J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223,
229 (Tex. 2003).  Contractual provisions
should be considered with reference to the entire instrument; no single
provision should control.  Webster,
128 S.W.3d at 229; Potter, 230 S.W.3d at 463.  Words in a contract must carry their
ordinary, generally accepted meaning unless the contract itself shows that the
terms have been used in a technical or different sense.  See Ramsay v. Md. Am. Gen. Ins. Co.,
533 S.W.2d 344, 346 (Tex. 1976).  In
construing a contract, we may not rewrite it nor add to its language.  Am. Mfrs. Mut. Ins. Co. v. Schaefer,
124 S.W.3d 154, 162 (Tex. 2003).  Also,
we must weigh that parties to a contract 

are considered masters of their own choices.  They are entitled to select what terms and
provisions to include in a contract before executing it.  And, in so choosing, each is entitled to rely
upon the words selected to demarcate their respective obligations and
rights.  In short, the parties strike the
deal they choose to strike and, thus, voluntarily bind themselves in the manner
they choose.

Cross Timbers Oil Co. v. Exxon Corp., 22 S.W.3d 24, 26 (Tex.
App.CAmarillo
2000, no pet.).








A contract is unambiguous if it can be given a
definite legal meaning; if it is subject to two or more reasonable
interpretations, it is ambiguous, creating a fact issue on the parties=
intent.  Webster, 128 S.W.3d at
229; Lopez v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 861
(Tex. 2000).  Lack of clarity, however,
does not necessarily create an ambiguity, and neither does a mere disagreement
between the parties.  See Universal
Health Servs., Inc. v. Renaissance Women's Group, P.A., 121 S.W.3d 742, 746
(Tex. 2003) (adding that whether Aa
contract is ambiguous is a question of law that must be decided by examining
the contract as a whole in light of the circumstances present when the contract
was entered@); see also City of The
Colony v. N. Tex. Mun. Water Dist., 272 S.W.3d 699, 722 (Tex. App.CFort
Worth 2008, pet. filed) (explaining that when Athe
meaning of a contract is unambiguous, a party=s
construction is immaterial@).

When a contract contains an ambiguity, the
granting of a motion for summary judgment is improper because the
interpretation of the instrument becomes a fact issue.  Coker v. Coker, 650 S.W.2d 391, 394
(Tex. 1983).  Conversely, the
interpretation of an unambiguous contract is a matter of law to be determined
by the trial court.  Gulf Ins. Co. v.
Burns Motors, Inc., 22 S.W.3d 417, 423 (Tex. 2000).








Section four of the REA provides that A. . .
the Univest Property may either contain the four (4) separate pad sites
substantially as shown on the Site Plan or contain three (3) pad sites so long
as all three (3) buildings are separated by at least one hundred feet (100=).@  Section three of the REA provides that A[t]he
Shopping Center shall be used for retail and/or restaurant purposes . . . and
the Univest Property, respectively, shall be entitled to no more than two (2)
financial institutions.@ 
Thus, the REA allows Univest to create three pad sites and designate its
pad sites for retail use.








Neither the Agreement nor the REA, however,
defines the term Apad site.@  Vineyard, therefore, suggests that the term
is ambiguous and argues that A[w]hether
Univest had the right to alter the layout depicted in the Site Plan turned on
whether it sought to build a >pad
site,= which
is a real estate term of art denoting a specific size.@[3]  In support of its argument, Vineyard cites to
the deposition testimony of Collins, in which Collins provides his
interpretation of the term Apad
site.@[4]  Such parol evidence, however, is not
admissible for the purpose of creating an ambiguity.  See David J. Sacks, P.C. v. Haden, 266
S.W.3d 447, 450 (Tex. 2008) (stating that an unambiguous contract will be
enforced as written, and parol evidence will not be received for the purpose of
creating an ambiguity or to give the contract a meaning different from that
which its language imparts).

 The Site
Plan attached to the REA depicts the overall layout of both Vineyard=s and
Univest=s
properties.  The portion of the Site Plan
pertaining to Univest=s property shows four Apad
sites@ that
are each approximately 5,000 square feet. 
Section four of the REA allows Univest to alter the Site Plan by
creating three Apad sites.@  The Site Plan does not, however, depict how
those three Apad sites@ should
look in size or shape.  Furthermore,
neither the Agreement nor the REA state restrictions as to the size or shape of
the Apad
sites.@








The Agreement and the REA do, however, expressly
state restrictions as to spacing, parking, dumpsters, and height.  If it had been Vineyard=s
intent, therefore, to restrict the size and shape of Univest=s Apad
sites,@ then
Vineyard could have expressly included such a provision in the Agreement or the
REA as it did for spacing, parking, dumpsters, and height.  However, it did not do so.  The only restrictions expressly provided
pertaining to Apad sites@ state
that Apad
sites@ must be
at least one hundred feet apart and Amay be
laid out differently so long as each pad site contains sufficient parking for
it[s] use.@








Thus, based on the plain language of the
agreement, the REA allowed Univest to create three pad sites, use its property
for retail, and alter the layout and size of its pad sites from the original
Site Plan; therefore, Univest=s
planned structure is in compliance with the REA.  If we were to interpret the agreement as
Vineyard asks us to, and require Univest to seek Vineyard=s
consent for its planned structure, then we would be rendering express
provisions in sections three and four of the REA meaninglessCspecifically,
Univest=s right
to create three pad sites, alter the layout of the original Site Plan, and use
its space for retail.  In order to
prevent rendering portions of the REA meaningless, the only reasonable
interpretation for the consent provision is that the parties intended for
consent to be sought when a party revises express provisions in the REA
and not when a party is in compliance with the REA.  See Coker, 650 S.W.2d at 393.  We conclude, therefore, that Univest=s
planned structure is in compliance with the REA as a matter of law and that the
trial court did not err in granting Univest=s
partial motion for summary judgment. 
Accordingly, we overrule Vineyard=s first
issue.

IV. 
Extrinsic Evidence

In its second issue, Vineyard argues that the
trial court erred by sustaining Univest=s
general objection to the purported parol evidence testimony of Collins and by
excluding portions of Collins=s
affidavit because Collins=s testimony met the admissibility
requirements under the rules of evidence and common law.  However, because we have concluded that the
terms in the REA are not ambiguous, we must overrule Vineyard=s
evidentiary issues.  See Fiess v.
State Farm Lloyds, 202 S.W.3d 744, 747 (Tex. 2006) (recognizing that if the
agreement is not ambiguous, courts do not consider extrinsic evidence when
interpreting the agreement). 
Accordingly, we overrule Vineyard=s second
issue.

V. 
Attorneys= Fees 

In its third and final issue, Vineyard claims
that the trial court erred by awarding attorneys= fees to
Univest and Yorkshire.[5]

A.  Standard of Review








When a statute states that a trial court Amay@ award
attorney=s fees,
such an award is reviewable for an abuse of discretion.  Smith v. McCarthy, 195 S.W.3d 301, 304
(Tex. App.CFort Worth 2006,  pet. denied); see Tex. Civ. Prac.
& Rem. Code Ann. ' 37.009 (Vernon 2008) (AIn any
proceeding under this chapter, the court may award costs and reasonable and
necessary attorney=s fees as are equitable and
just.@).  An award of reasonable attorney=s fees
is mandatory under section 38.001 of the civil practice and remedies code if
there is proof of the reasonableness of the fees, but the amount of the
award lies within the trial court=s
discretion.  Ulico Cas. Co. v. Allied
Pilots Assoc., 187 S.W.3d 91, 109B10 (Tex.
App.CFort
Worth 2005, no pet.)  (AA trial
court has discretion in fixing the amount of attorney=s fees,
but it has no discretion to entirely deny attorney=s fees
established under section 38.001.@), rev=d on
other grounds, 262 S.W.3d 773 (Tex. 2008).  

To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, we must decide whether the act
was arbitrary or unreasonable.  Cire
v. Cummings, 134 S.W.3d 835, 838B39 (Tex.
2004).  We cannot conclude that a trial
court abused its discretion merely because we would have ruled differently in
the same circumstances.  E.I. du Pont
de Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995).








B.  Discussion

Vineyard claims that because the trial court did
not find that an award of attorneys= fees to
Univest and Yorkshire was Aequitable
and just,@ then any such award predicated
on the Declaratory Judgment Act (ADJA@) is
improper.  We disagree.








When an abuse‑of‑discretion standard
of review applies to a trial court=s
ruling, findings of fact and conclusions of law are not required unless a
statute or rule specifically states otherwise. 
See In re M.J.G., 248 S.W.3d 753, 761 (Tex. App.CFort
Worth 2008, no pet.); Davis v. Spring Branch Med. Ctr., Inc., 171 S.W.3d
400, 413 (Tex. App.CHouston [14th Dist.] 2005, no
pet.).  Therefore, because we review the
award for attorneys= fees under the DJA for an abuse
of discretion, and because the DJA is silent on findings of fact and
conclusions of law, we hold that the trial court was not required to issue
express findings and conclusions in relation to the award of attorneys= fees to
Univest and Yorkshire.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 37.009;
see also Benchmark Ins. Co. v. Sullivan, No. 12‑07‑00223‑CV,
2009 WL 1153385, at *4 (Tex. App.CTyler
Apr. 30, 2009,  no pet.) (mem. op.)
(implying that express findings of fact and conclusions of law are unnecessary
when a trial court awards attorneys= fees
under the Texas Labor Code).  Furthermore,
where, as here, no findings of fact and conclusions of law are requested or
filed, we imply all necessary findings and conclusions to support the trial
court=s
judgment.  See Sixth RMA Partners,
L.P. v. Sibley, 111 S.W.3d 46, 52 (Tex. 2003).  Thus, we presume that the trial court
impliedly found that an award of attorneys= fees to
Univest and Yorkshire was Aequitable
and just.@[6]








Vineyard, however, also claims that the trial
court improperly awarded contractual attorney=s fees
under the REA to Yorkshire, a non-party to the agreement.  Yorkshire, on the other hand, points out that
it filed a claim for attorney=s fees
under the REA and under the DJA; therefore, the trial court=s award
of attorney=s fees could be supported by its
claim pursuant to the DJA.  We
agree.  Because we presume the trial
court awarded attorney=s fees to Yorkshire based on its
claim for declaratory relief, we need not address Vineyard=s
argument pertaining to attorney=s fees
under the REA.  See Worford v. Stamper,
801 S.W.2d 108, 109 (Tex. 1990) (stating that a judgment must be affirmed if it
can be upheld on any legal theory that finds support in the evidence); see
also Fortenberry v. Cavanaugh, No. 03‑07‑00310‑CV, 2008
WL 4997568, at *10 (Tex. App.CAustin
Nov. 26, 2008, pet. denied) (mem. op.) (presuming that the trial court awarded
appellee attorney=s fees based on appellee=s claim
for declaratory relief, and declining to address any additional grounds for
attorney=s
fees).  Accordingly, we overrule Vineyard=s third
issue.

VI. 
Conclusion

Having overruled all three of Vineyard=s
issues, we affirm the trial court=s
judgment.

 

BOB
MCCOY

JUSTICE

 

PANEL:  CAYCE, C.J.; MCCOY and
MEIER, JJ.

DELIVERED: October 1, 2009











[1]See Tex. R. App. P. 47.4.





[2]Vineyard claims that
Univest filed a site plan listing Yorkshire as the owner of the property at
issue in this case, thereby making Yorkshire a party.  We refer to Univest and Yorkshire collectively
as AUnivest@ except where
inappropriate. 





[3]The dictionary in
defining the commonly used term Apad site,@ however, does not mention size, but instead
defines Apad site@ as Aa building lot available
for retail development, as next to a shopping mall or center.@  Dictionary.com, Apad site,@ http://dictionary.reference.com/browse/pad+site
(last visited Sept. 30, 2009).





[4]Collins testified that Apad site@ is a term of art in the
real estate development industry that refers to a restaurant or a retail
building that is anywhere from 2,500 square feet up to 9,000 square feet.  The Site Plan, however, depicts two of
Vineyard=s own Apad sites@ along Highway 121 which
contain retail buildings that are over 9,000 square feet.  Furthermore, Collins testified at one point
that it was not the size of the building Vineyard objected to but its width and
that Univest could have a 16,000 square foot building so long as the building
was laid out a certain way.





[5]Both Univest and Yorkshire
filed a motion for attorneys= fees under the REA, which expressly provided for
attorneys= fees, and under the
Declaratory Judgment Act.





[6]We note that in its reply
brief, Vineyard presents an alternative argument on why the trial court had to
make a finding as to the attorneys= fees being Aequitable and just.@  Specifically, Vineyard references a rule 11
agreement in which the parties agreed that the trial court had to make factual
findings to rule on the motion for attorneys= fees. 
Vineyard, however, cites no authority to support its argument.  Therefore, the argument is inadequately
briefed and presents nothing for our review. 
See Tex. R. App. P. 38.8(h).